BROOKS v. AUSTIN, Com'r of Ins. & Banking. (No. 6139.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 6, 1918. Rehearing Denied Dec. 4, 1918.)

1. BANKS AND BANKING &#9755;48(1) — STOCKHOLDER'S STATUTORY LIABILITY — ASSESSMENT—INSOLVENCY OF BANK.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 459, 552, 556, the real owner of bank stock at time of bank's failure can be assessed and held liable for bank's debts, although not stockholder of record.

2. BANKS AND BANKING &#9755;47(2)—INSOLVENCY OF BANK——STOCKHOLDERS' LIABILITY— COMMISSIONER'S DISCRETION.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 459 and 474, making the necessity of en-

forcing the personal liability of the stockholders, under articles 459, 552, and 556, of a bank, discretionary with the commissioner of insurance and banking, the commissioner's determination is conclusive.

3. BANKS AND BANKING ⟲⟹47(2) — STOCK-HOLDERS' LIABILITY — ACTION BY COMMISSIONER—DEFENSE.

In commissioner's action to enforce personal liability of bank stockholders, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 459, 552, and 556, the commissioner's failure to call a meeting of stockholders, under article 474, is no defense.

4. BANKS AND BANKING ⟲⟹47(2) — STOCK-HOLDERS' LIABILITY—RIGHTS OF BANK COMMISSIONER—COLLECTION OF ASSESSMENT.

Until an agent to liquidate bank is elected at stockholders' meeting called by commissioner of insurance and banking, under Vernon's Sayles' Ann. Civ. St. 1914, art. 474, the commissioner is authorized to collect assessment of stockholders' liability, under articles 459, 552, and 556.

5. BANKS AND BANKING ⟲⟹47(1) — STOCK-HOLDERS' LIABILITY — COLLECTION OF ASSESSMENT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 459, giving commissioner of insurance and banking the right to enforce the individual liability of the stockholders of an insolvent bank, under articles 552 and 556, the commissioner, if he makes an assessment, shall collect the same from all stockholders if it is possible to do so.

6. BANKS AND BANKING ⟲⟹47(1) — STOCK-HOLDERS' LIABILITY—ACTION TO ENFORCE—PRESUMPTIONS.

A stockholder purchasing bank stock is presumed to know the law imposing statutory liability on bank stockholders, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 459, 552, and 556.

7. BANKS AND BANKING ⟲⟹48(2) — STOCK-HOLDERS' LIABILITY—ACTION TO ENFORCE—DEFENSE—MISREPRESENTATION IN ACQUIRING STOCK.

That bank stockholder was induced to acquire stock through misrepresentation of former holder, where there was no fraud perpetrated by bank, is no defense in action to enforce stockholders' personal liability upon bank's insolvency, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 459, 552, and 556.

8. BANKS AND BANKING ⟲⟹40—TRANSFER OF STOCK—MISREPRESENTATION BY TRANSFEROR—VALIDITY OF TRANSFER.

Where bank stockholder was induced to acquire stock through misrepresentations of transferor, the transaction was voidable and not void.

9. BANKS AND BANKING ⟲⟹48(1) — STOCK-HOLDERS' LIABILITY—STOCK TRANSFER—LIABILITY OF TRANSFEROR.

Bank stockholder who transferred stock under misrepresentation is not liable for stockholders' liability assessment, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 459, 552, and 556, after stock has been transferred, the transaction being voidable and not void.

Error from District Court, Bexar County; S. G. Tayloe, Judge.

Action by John S. Patterson, commissioner of insurance and banking, for whom Charles O. Austin, commissioner of insurance and banking, was substituted, against R. E. Brooks and others. From the judgment rendered, defendant named brings error. Affirmed.

A. J. Bell, of San Antonio, and Woods, King & John, of Houston, for plaintiff in error.

Veale & Lumpkin, of Amarillo, for defendant in error.

MOURSUND, J. This is a suit filed June 1, 1916, by John S. Patterson, then commissioner of insurance and banking of the state of Texas, and who was the successor in office of H. W. Collier, against J. F. Sadler, Jr., R. E. Brooks, and J. M. Powers, to enforce the payment of an assessment of $14,-000, being the par value of 140 shares of the stock of the First State Bank of Amarillo, Tex., originally issued to said Sadler, and within 12 months next before the suspension of payments by said bank transferred by him to said Powers, who, it was alleged, acquired and held same as the agent of said Brooks. It was further alleged that Powers, as the agent of Brooks, surrendered said certificates, and had new ones issued to him in lieu thereof, aggregating said sum of $14,000, and that Brooks was the legal owner and holder of said shares at the date the bank closed. After appropriate allegations concerning the incorporation of the bank, and its activities and condition, it is alleged that on or about April 2, 1916, said bank was insolvent, closed its doors, and its officers and directors surrendered it to said Collier, in order that its business and affairs might be wound up, its assets collected, and its obligations paid; that on or about April 7, 1916, said Collier, having investigated the assets and liabilities of said bank, and become convinced that its assets were insufficient to pay off its just debts, in the exercise of his duties, as such commissioner, to the creditors of the bank and the state of Texas, elected to and did declare the respective owners and holders of the stock thereof to be then due and owing an amount equal to the par value of the stock then held and owned by said respective stockholders, and made a similar assessment against all who had transferred stock within 12 months next preceding April 2, 1916.

Brooks and Powers filed a plea in abatement, and, after it was stricken out, filed an answer, many paragraphs of which were stricken out on exception. Brooks and Powers announced that they would not ask any relief, by their cross-action, against Sadler, who did not answer.

The court rendered judgment against Brooks and Sadler, jointly and severally, for $17,133.59, besides costs of suit, and that plaintiff take nothing against Powers.

We have stated the case very briefly, because on the trial some of the issues made by the pleadings were eliminated, and the pleas interposed by Brooks and Powers, to which most of the assignments of error re-

⟲⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

late, can be stated in connection with the discussion of the assignments.

The evidence disclosed that the stock certificates were owned by R. E. Brooks at the time the bank suspended payment, but were held for him by Powers, in whose name they stood on the books of the bank.

[1] By the first two assignments it is contended that only stockholders of record can be assessed and held liable for the debts of a bank. Brooks was the real owner of the stock at the time the bank failed, and is liable under our statutes for the assessment. Articles 552, 556, and 459, Vernon's Civ. St.; Cook on Corporations (7th Ed.) § 249; Corpus Juris, vol. 7, p. 709; Ohio Valley Nat. Bk. v. Hulitt, 204 U. S. 162, 27 Sup. Ct. 179, 51 L. Ed. 423; Natl. Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Pauly v. State Loan & Trust Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844; Lucas v. Coe (C. C.) 86 Fed. 972. Article 556 of our statutes is identical with section 5152 of the federal statute (U. S. Comp. St. 1916, § 9690), except that our Legislature has added holders of stock as collateral security to the list of persons specified as not to be held personally liable. This appears to have been done for the purpose of making the article read in accordance with the construction given the federal act.

The plea in abatement contained the allegation that about December 28, 1917, the plaintiff was offered, in cash, an amount sufficient to pay all of the remaining liabilities of the bank, and all court costs, attorney's fees, and other fees of whatever kind, due on account of the liquidation of said bank, in consideration of the transfer by plaintiff of the assets proper of said bank, and that such offer was declined about January 2, 1918. It was alleged that plaintiff refused to apply to the court for authority to sell the assets and settle the debts, and therefore was not prosecuting this suit for the benefit of the creditors, but for the purpose of attempting to adjust equities between stockholders who have paid assessments and those who have not paid. These allegations, in substance, were repeated in the answer; and it was further alleged that plaintiff could immediately sell the assets for a sufficient amount to pay in full all liabilities remaining unpaid, and that the defendants offered to produce a buyer for the same "at such price and for such sum, who is able, willing, and ready to buy." It was also alleged that the assets, if properly administered, would have been ample to pay off the liabilities, without assessing the stockholders, but that plaintiff had negligently allowed a large amount of the assets to be wasted and lost, and had unnecessarily and without authority of law paid out large sums in expenses. It was further alleged that the assets had been converted into cash, "and all the liabilities of said bank have been long since paid, or, if they be mistaken in this allegation, then they say that there is an ample sufficiency of assets and money, collected and collectible, belonging to said bank, including all court costs, liquidation fees, and expenses of every character," and, if plaintiff would convert the assets into cash, there will be no necessity for an assessment on said shares of stock. The defendants also alleged that plaintiff had obtained judgments against several stockholders, and, if a reasonable amount of such judgments have been collected, there is more money in plaintiff's hands than is necessary to pay off all of the liabilities of said bank. They also prayed for an accounting, and the appointment of an auditor, in order that the condition of affairs of the bank might be made known in support of their allegations to the effect that there is no necessity for collecting the assessment sued for.

We have stated all matters alleged for the purpose of showing that the liability of the bank, and all costs, fees, and expenses, could be paid without collecting the sum assessed against Brooks, for the reason that we believe all of such alleged defenses can be disposed of together. The theory on which they are based is that the commissioner has no authority, except to administer the assets, until all debts and liabilities of the bank, and the expenses incident to the liquidation thereof, are paid; and that as soon as sufficient money is obtained, whether from the assets alone, or the assets and assessments collected from stockholders, to pay all such liabilities, costs and fees, the effort to collect assessments from those stockholders who declined to pay constitutes an attempt to administer the assets for the purpose of adjusting equities between contributing stockholders. Plaintiff in error also contends that, even if the liabilities and expenses have not been paid, but can be paid without exacting from him the amount assessed against him, he would have a good defense to the suit. He relies upon article 459, Vernon's Civ. Stat., which provides that the commissioner may, if necessary to pay the debts of such state bank, enforce the individual liability of the stockholders; and article 474, Vernon's Civ. Stat., which requires the commissioner to call a meeting of the stockholders after he has paid all just claims, and has repaid to the guaranty fund all amounts paid out of it to depositors of the bank, and has paid all expenses, and provides that at such meeting the stockholders shall determine whether the commissioner shall be continued as liquidator, or whether an agent or agents shall be elected for that purpose.

[2] Under the statute the questions whether it is necessary to enforce the personal liability of the stockholders, and, if so, to what extent, are referred to the commissioner's judgment and discretion, and his de-

termination of them is conclusive. Collier v. Smith, 169 S. W. 1108; Patterson v. Stringfellow, 192 S. W. 555; Kennedy v. Gibson, 75 U. S. (8 Wall.) 505, 19 L. Ed. 478; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 169.

[3-5] The fact that the commissioner failed to call a meeting, as provided in article 474, furnishes no defense to a suit by him for the assessment. We need not inquire into what remedy the stockholders might have to secure the calling of such a meeting. It is certain that until an agent is elected the commissioner is authorized to collect the assessment, and that the statute contemplates that he shall, if he makes an assessment, collect the same from all stockholders, if it is possible to do so.

The answer contained allegations showing that Sadler had, by false representations of a material character, induced Brooks and Powers to trade for the stock in the bank, and that they did not discover the falsity of the representations until after the bank was closed; that immediately upon making such discovery they at once repudiated said trade, and took the position with the commissioner of banking, and the creditors and stockholders, that they had been induced and misled into acquiring said stock by means of fraudulent representations, and denied the ownership of said stock; that, as soon as they could ascertain the whereabouts of Sadler, they filed their answer and cross-action in this suit, asking for a cancellation and rescission of said trade.

[6-9] These allegations were stricken out on the theory that they constituted no defense. Plaintiff in error contends that, as his name never appeared on the books of the bank as a stockholder, and as Sadler was held liable on the ground that he transferred the stock within 12 months next preceding the failure of the bank, the creditors cannot say that they relied on plaintiff in error's ownership of the stock, or that they have been injured by release of Sadler, and therefore plaintiff in error cannot be held liable for the assessment if he succeeds in procuring a rescission of the trade with Sadler. The suit for the assessment would, under such theory, await the termination of the controversy between Brooks and Sadler. The statute authorizes the assessment against the owner of the stock, and is intended to provide a speedy method of supplementing the assets of the bank. If the commissioner is to await the settlement of all controversies between individuals as to whether one has defrauded the other, the collection of assessments will cause a lengthy, and hence costly, liquidation of the affairs of insolvent banks. There is no injustice in holding the owner liable, for he is presumed to know the law, and, if he does not wish to risk the statutory liability, he can refrain from acquiring bank stock.

In the case of Lantry v. Wallace, 182 U. S. 536, 21 Sup. Ct. 878, 45 L. Ed. 1218, the court declined to commit itself on the question whether a stockholder could avoid liability on an assessment, under the federal act, in a suit in equity, on the ground that the officers of the bank by fraud induced him to become a stockholder. The court refers to the case of Scott v. Deweese, 181 U. S. 202, 21 Sup. Ct. 585, 45 L. Ed. 823, and quotes therefrom, but at the same time restricts the application of the quoted part to the particular facts of the case decided. The question thus left open has not been decided so far as we are able to ascertain, nor do we find any decision by the federal Supreme Court on the question presented in this case. It may be plausibly urged that fraud by officers of a bank, whereby a person was induced to become a stockholder, gives rise to certain rights which can be asserted in any case founded on the statute making stockholders liable, provided no rights of creditors have intervened; but when the fraud is perpetrated by an outsider, for whose acts the bank can in no way be held responsible, it seems to us that there can be no ground for urging that the stockholders' liability is dependent upon whether or not he can maintain a suit for rescission. In the first case it might be urged that the other stockholders should not profit by the fraud of their officers, but no such argument would apply when the fraud is that of an outsider. The transfer made by Sadler, taking the allegations as true, was voidable, and not void. Sadler could not be held liable for the assessment on the theory that he owned the stock at the time the bank failed. Williams v. Cobb, 242 U. S. 308, 37 Sup. Ct. 115, 61 L. Ed. 325. Brooks was the owner, and we believe under the statute was liable for the assessment. Any other construction would read an exception into the statute, and greatly interfere with the accomplishment of the purpose in view in making the owner of stock liable to an assessment.

We conclude there is no merit in any of the assignments of error, and that the judgment should be affirmed.