**HOUSTON NAT. EXCH. BANK v. CHAP-
MAN, State Com'r of Ins. & Banking.
(No. 8530.)**

(Court of Civil Appeals of Texas. Galveston.
May 15, 1924. Rehearing Denied
June 5, 1924.)

**1. Banks and banking ⬪⟺47(2)—Stockholders' assessment within commissioner's discretion.**

The amount to be assessed against a stockholder and the time when he is to be required to pay is within the discretion and judgment of the Commissioner of Insurance and Banking and his determination is conclusive, under Const. art. 16, § 16, Vernon's Sayles' Ann. Civ. St. 1914, arts. 459, 552.

**2. Banks and banking ⬪⟺47(2)—Determination of commissioner of necessity for assessment is conclusive.**

Determination of Commissioner of Insurance and Banking that it is necessary to enforce stockholders' liability to pay the debts of the bank cannot be questioned; hence it is no defense to a stockholder against such enforcement that all the liabilities of the bank have been paid or that the assets and money collected and collectible belonging to the bank are sufficient to pay its debts and expenses of litigation.

**3. Banks and banking ⬪⟺49(6)—Only commissioner may sue to enforce stockholders' liability.**

Under Const. art. 16, § 16, and Vernon's Sayles' Ann. Civ. St. 1914, arts. 459, 552, no one but Commissioner of Insurance and Banking has the right to sue to enforce stockholders' liability, since his right arises directly out of the statute and exists irrespective of the question of ownership of debts owed by the bank and of the right to the enforcement of such stockholders' liability; hence, where a "guaranty bank" upon the advancing of $30,000 from state guaranty fund to pay the debts of an insolvent bank, paid the remaining debts of insolvent bank and became the one and only creditor of the bank, the assignment to the guaranty bank by the Commissioner of Insurance and Banking of the right to enforce stockholders' liability did not affect the propriety of his bringing suit in his own name as commissioner to enforce such liability.

**4. Judgment ⬪⟺489—Party cannot collaterally attack judgment of court having jurisdiction of persons and subject-matter.**

A party cannot attack collaterally the judgment of a court having jurisdiction of the parties and subject-matter and power to render judgment.

**5. Evidence ⬪⟺442(1)—Parol and documentary evidence of parol contemporaneous agreement admissible to explain written agreement.**

In a proceeding by Commissioner of Insurance and Banking to enforce double liability of stockholder of insolvent bank for the benefit of an assignee of the entire assets of the bank, parol and documentary evidence of the commissioner's contemporaneous additional oral agreement to call for the services of the attorney general's department and to institute and prosecute in his name as commissioner all suits necessary to recover an assessment of 100 per cent. was admissible to explain the written contract; these being matters as to which the written contract was silent, but which were not inconsistent with its terms.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by J. L. Chapman, as State Commissioner of Insurance and Banking, against the Houston National Exchange Bank. Judgment for plaintiff, and defendant appeals. Affirmed.

Love, Wagner & Wagner, of Houston, for appellant.

Ed. J. Hamner, of Sweetwater, and Champ Ross, and Chas. B. Wood, both of Houston, for appellee.

GRAVES, J. A concededly sufficient statement of the nature and result of the suit is taken from appellant's brief, as follows:

"This suit was instituted by the appellee, in his official capacity as commissioner of insurance and banking of the state of Texas, to recover upon an assessment alleged to have been made against the appellant as a stockholder in the First State Bank of Bronte, Texas, which bank was alleged to have become insolvent and the management and control thereof assumed by the commissioner for the purpose of liquidating the affairs of said bank. The petition alleged that the insolvent bank was on January 11, 1922 (the date upon which the same was taken charge of by the commissioner), and at the time of the filing of the suit, insolvent and unable to pay its debts, and that its assets are insufficient to pay off and discharge its legal obligations. That for the purpose of liquidating the affairs of said bank, winding up its affairs and discharging its legal obligations, the commissioner, on January 23, 1922, made an assessment of an amount equal to the par value of the stock held by each of its stockholders, and that the appellant was then the owner of 24 shares of the capital stock of said insolvent bank, and that by reason thereof the defendant became liable to the plaintiff for the sum of $2,400, with interest thereon from January 23, 1922, for which he prayed judgment.

"The appellant answered by a plea in abatement by which it assailed the right of the commissioner to recover in the capacity in which he sued, for the reason that the plaintiff's predecessor in office had, prior to the institution of the suit, sold, assigned, and delivered to the Guaranty State Bank of Bronte, Texas, all of the property and assets of said First State Bank of every kind and character, including the liability of the stockholders of said bank and all funds to be realized on account thereof, and that the Guaranty State Bank, with the consent of the plaintiff and his predecessor in office, had sold and disposed of a portion of said assets, collected and appropriated a large portion of the accounts and bills receivable of said First State Bank, and that the plaintiff

⬪⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and his predecessor in office had authorized and permitted said Guaranty State Bank to continue in the possession and control of the assets of said First State Bank and to dispose of the same and to collect, receive, and appropriate the bills receivable belonging to said bank at the time the same was taken charge of by the commissioner, and thereby abandoned the trust by virtue of which the assessment sued on was made, and rendered it impossible for the commissioner to discharge the duties of liquidating the affairs of said bank, discharging its debts and obligations to its creditors and stockholders, or to apply the assessment sued for to the discharge of the debts and liabilities of said bank.

"Answering further, the appellant alleged that the plaintiff ought not to have or maintain the suit or to recover upon the cause of action sued on, because prior to the institution of the suit the plaintiff and his predecessor in the office of commissioner of insurance and banking had sold, assigned and conveyed to the Guaranty State Bank the claim and cause of action sued on, and the plaintiff was not the owner of said cause of action and did not own, claim, or hold the same at the time of the institution of this suit or at any time subsequent thereto.

"It was further alleged in the answer that if the plaintiff ever had any right to recover on the cause of action sued on, such right resulted from the alleged insolvency of the First State Bank of Bronte, Texas, and the alleged action of the commissioner of insurance and banking in taking charge of its property and assets for the purpose of liquidating the same and making an assessment against the stockholders of said bank for the purpose of enabling said commissioner to liquidate and wind up the affairs of said bank and discharge its obligations to its creditors and stockholders. That it was the duty of the commissioner under the law by virtue of which he was authorized to make or collect said assessment upon the stockholders of said bank, to collect the bills receivable due said First State Bank and dispose of all of the property and assets thereof in such manner as to realize thereon the value thereof and apply the proceeds to the payment of the debts of said bank, and in the administration of such trust it was the duty of said commissioner, after the payment of its debts, to distribute to and among its stockholders all of the remainder of the proceeds of the sale of its assets and the collection of its accounts and bills receivable and the assessment against its stockholders. That immediately after taking charge of said bank and the assets thereof, and immediately after making the assessment against its stockholders, the plaintiff's predecessor in office abandoned the trust assumed by him in taking charge of said bank, and failed and refused to carry out the same, and rendered it impossible for him, or the plaintiff as his successor, to so discharge said trust, in that the plaintiff's predecessor sold, transferred, and delivered to the Guaranty State Bank all of the property and assets of said insolvent bank, including the liability of its stockholders under the assessment sued on, and authorized and permitted said Guaranty State Bank to convert and appropriate to its own use and sell and dispose of the property and assets of said bank, and collect, compromise, discharge and appropriate all of the outstanding claims, accounts, and bills receivable due said insolvent bank, without any control over the same or the disposition or application thereof by said commissioner, and that the plaintiff has recognized, acquiesced in, and. consented to such action of his predecessor in office, by reason of all of which plaintiff never acquired any right to enforce the collection of said assessment, and was estopped and precluded from the recovery of any judgment against the appellant herein.

"The appellee by way of supplemental petition alleged that after the levy of the assessment against the stockholders of the insolvent bank the commissioner entered into negotiations with the Guaranty State Bank for the sale and purchase of the assets and property of said insolvent bank, which negotiations consisted partly of a contract and agreement between the commissioner and the Guaranty State Bank which was not reduced to writing, and partly of a written contract dated January 28, 1922. That the agreement of the commissioner which was not set out in the written contract was that the commissioner agreed, in consideration of the Guaranty State Bank performing the contract on its part reduced to writing, to assume, pay off, liquidate, and satisfy all lawful debts, liabilities, and claims of all creditors of the First State Bank, except any liability of the stockholders thereof, that the commissioner would sell and convey to the Guaranty State Bank all of the assets of the First State Bank of every kind and character, known and unknown, and all liability of the stockholders of said bank and all funds which might have theretofore or might thereafter be received or realized on account thereof, and that in addition thereto it was agreed by the commissioner that he would obtain the services of the Attorney General's department and would institute and prosecute in his name as such commissioner all suits necessary to recover said assessment against the stockholders and pay over the same to the Guaranty State Bank, and would take all necessary legal steps to enforce the liability of all of the stockholders of said insolvent bank for the use and benefit of the Guaranty State Bank, and that in pursuance thereof and at the request of said Guaranty State Bank this suit was instituted by the commissioner and was being prosecuted for the use and benefit of said Guaranty State Bank and at its request. That in order to carry out the contract and agreement as above alleged, the commissioner of insurance and banking, joined by the liquidating agent of said First State Bank, applied to the district court of Coke county, the county in which said First State Bank was located, in vacation, for authority to consummate said sale in accordance with said contract. That after considering said application the court entered its order, in vacation, setting said cause for hearing and requiring notice thereof to be given said insolvent bank, and thereafter said bank appeared and waived service of notice and entered its appearance; and thereafter, on January 28, 1922, said court considered said application for an order authorizing said sale in accordance with said contract and granted the same, and said commissioner was directed to deliver all of said assets to said Guaranty State Bank and to carry into effect all

the provisions of said contract, and deliver proper instruments of conveyance together with said property and assets in accordance therewith. That under the law the commissioner of insurance and banking was the only person authorized to institute and prosecute suits against stockholders of insolvent and defunct banks to recover assessments made against them, and it became the duty of the commissioner to institute and prosecute this suit, 'and this suit is instituted by plaintiff herein in pursuance of the law and of his duty in the premises and in pursuance of his contract and agreement with the Guaranty State Bank of Bronte, Texas, so to do.'

"In reply to the plaintiff's supplemental petition the appellant filed its supplemental answer and by way of reply thereto alleged:

"(a) That plaintiff ought not to recover either in his own right or for the use and benefit of the Guaranty State Bank, because it appears from the admissions contained in the plaintiff's supplemental petition that before the institution of this suit the plaintiff and his predecessor in office had parted with both the legal and equitable title to the cause of action sued on, and that in so far as the plaintiff could do so, he had vested both the legal and equitable title to said cause of action in the Guaranty State Bank, and said bank was at the time of the institution of this suit and at the time of the filing of the supplemental petition, the sole owner of said cause of action and vested with the exclusive right to institute and maintain a suit or recover judgment thereon, if any such right exists in favor of any one.

"(b) That plaintiff ought not to recover for the use and benefit of the Guaranty State Bank, because the proceedings alleged in said supplemental petition by virtue of which the plaintiff's predecessor in office attempted to sell, convey, and deliver the property and assets of the First State Bank to said Guaranty State Bank, was void and ineffectual, because the same was not authorized by law, was against public policy, and in violation of the defendant's rights as a stockholder in said defunct bank.

"(c) The defendant denied that any valid judgment of a court of competent jurisdiction had been rendered authorizing, approving or confirming the alleged sale of the property and assets of the First State Bank or of the cause of action sued on herein by the commissioner of insurance and banking to the Guaranty State Bank, as alleged in said supplemental petition, but on the contrary defendant alleged that such pretended judgment was void and the entire proceedings by virtue of which said sale and transfer was attempted to be authorized and made were unauthorized by law and void. That the defendant was not a party to such proceedings, had no knowledge or notice thereof, and none of the stockholders of said First State Bank were parties to such proceedings or were afforded an opportunity to protect their rights. That in truth and in fact the Guaranty State Bank conceived the plan to acquire the assets of the First State Bank, including the assessment and the right to recover thereon against the stockholders of said bank, by assuming the obligation to pay the debts of said insolvent bank, which assets were by said Guaranty State Bank considered to be of such value to it as to make such trade desirable and profitable to it, and that the commissioner of insurance and banking entered into said plan of said Guaranty State Bank, and in order to aid it in the accomplishment of such purpose, said Guaranty State Bank and commissioner caused to be presented to the judge of the district court of Coke county, in vacation, a petition requesting said judge to approve such plan and authorize the sale or trade so conceived and entered into, which petition was filed and presented to said judge on January 28, 1922, and on the same day said judge made an order by which he attempted and pretended to approve such sale and assignment and to sanction the accomplishment of the purpose of said Guaranty State Bank and the commissioner of insurance and banking as aforesaid. That said pretended order of said judge was obtained on the same date on which the application therefor was filed, and the entire scheme was consummated with great haste and without affording an opportunity to the stockholders of said insolvent bank to become advised thereof or be heard in opposition thereto. That such proceedings were unauthorized by law and were, therefore, void and ineffectual. That the commissioner of insurance and banking, in pursuance of the plan or scheme as aforesaid, and under the pretended authority and approval of said district judge, on the same date delivered all the assets of said First State Bank to said Guaranty State Bank, which latter bank proceeded to and has appropriated to its own use and benefit all of said assets, and has managed, controlled and disposed of the same as it desired and without any supervision or control over its actions in that regard by the commissioner of insurance and banking, as is fully set forth in the plaintiff's original petition.

"The hearing on the plea in abatement and trial on the merits was had before the court without a jury and judgment rendered overruling the plea in abatement, to which defendant excepted, and for the plaintiff on the merits for the sum of $2,582, to which judgment the appellant excepted and gave notice of appeal."

Although appellant bank urges on appeal 12 propositions of law, we think they really comprehend but 2 substantive defenses against the banking commissioner's cause of action: (1) That the sale made by him to the Guaranty Bank "was void and ineffectual because same was not authorized by law, was against public policy, and in violation of defendant's right as a stockholder in said defunct bank"; (2) while void and ineffectual, still such sale by the commissioner divested title out of him to all property and assets of the First State Bank, including the declared-upon assessment against its stockholders, and constituted an abandonment of his official trust, in consequence whereof he was estopped to sue and recover in this behalf. It is thought that a determination of the questions thus raised will determine the merits of the appeal, without separate discussion of the various points as presented.

The undisputed facts controlling the disposition made of the cause by the trial court are thus stated in the brief filed in this court

in behalf of the appellee, he being therein designated as "the commissioner," the First State Bank of Bronte, the "insolvent bank," and the Guaranty State Bank of Bronte as the "Guaranty Bank":

"1. The said 'insolvent bank' was duly and legally incorporated under the banking laws of Texas, and under what is known as the guaranty fund.

"2. It was agreed that on January 11, 1922, said 'insolvent bank' owed a large indebtedness which it was unable to pay; that its board of directors met on that day 'and after considering a statement of the financial condition of said bank, declared it hopelessly insolvent, and placed its assets in the hands of' a state bank examiner, 'and directed him to post a notice on the doors of the bank as follows: "This institution is in the hands of the commissioner of insurance and banking of the state of Texas," which was done' by said state bank examiner.

"3. Thereupon on January 12, 1922, 'the commissioner' appointed a special liquidating agent of the department to take charge of the affairs and effects of said 'insolvent bank,' and represent 'the commissioner' in all matters pertaining to the liquidation of said bank; and said property and assets of said bank were forthwith placed in the hands of said special agent and taken possession of by him.

"4. With the assistance of a state bank examiner, 'the commissioner' 'determined that in order to pay the debts of said bank it was necessary to enforce the full liability of the stockholders, and it was further determined that in order that the debts of the bank be paid it was necessary to withdraw $30,000 from the state guaranty fund.' On January 23, 1922, 'the commissioner' assessed each stockholder in said 'insolvent bank' an amount equal to the par value of shares of stock owned by him on January 11, 1922, and on same date issued and mailed to each stockholder a notice of such assessment and directed the payment thereof to him, or to his special liquidating agent. Notice of this assessment was received by appellant January 26, 1922, it being the owner of 24 shares of the stock of the said 'insolvent bank' of the par value of $2,400.

"5. It having been determined by 'the commissioner' and his examiner, that in addition to the full liability of the stockholders it would be necessary in order to pay the debts of said 'insolvent bank' that the state banking board pay into 'the assets of the said First State Bank of Bronte, Texas, the sum of $30,000 from the depositors' guaranty fund in order to protect the demands of the unsecured and noninterest drawing deposits of said bank.' This was done.

"6. The appellant has not paid anything in the way of an assessment on account of its' ownership of stock in said 'insolvent bank.'

"7. On January 28, 1922, 'the commissioner' joined by his special liquidating agent, filed his petition in the district court of Coke county, setting forth the insolvency of the bank; that it was in his hands for liquidation; specifying its property, assets and liabilities; that the 'Guaranty Bank' was a duly incorporated bank; that he had entered into a contract with said 'Guaranty Bank,' which was attached to the petition, whereby the 'Guaranty Bank' would assume all of the liabilities of the said 'insolvent bank'

and take over all of its assets. The petition set out fully the reasons and advantages of the contract; prayed for service on said 'insolvent bank'; that upon examination and hearing of evidence the contract be approved and the sale ordered made, etc. On the same day the court in vacation ordered citation to be served on said 'insolvent bank,' and it thereupon duly and legally entered its appearance, waived further time and notice, and consented to the consummation of the trade as made. The court then 'heard evidence, and being fully advised as to the facts' entered a decree granting the petition, and ordering that the sale be consummated, etc. The contract was then finally made, report thereof made to the court, and an order entered confirming and approving the sale and directing the execution of proper instruments of conveyance to carry into effect the decree, and all of these proceedings were entered of record in the minutes of the district court.

"8. The contract provided for paying $30,000 from the depositors' guaranty fund of the state of Texas, into the assets of said 'insolvent bank' in order to protect the unsecured noninterest bearing deposits. That 'the commissioner'. sell and convey all the assets of the said 'insolvent bank' of every kind and character, real, personal and mixed, known and unknown, wheresoever situated, unto said 'Guaranty Bank'; it being understood that all liabilities of stockholders of said 'insolvent bank,' and all funds which may heretofore or hereafter be realized on account thereof, and all cash paid by 'the commissioner' into the assets of the said 'insolvent bank' from the depositors' guaranty fund shall be deemed and considered part of the assets of said bank. The 'Guaranty Bank' bound itself absolutely and at all events to assume, pay off, liquidate, discharge, and satisfy all lawful debts, lawful liabilities, and lawful claims known and unknown, of all creditors of said 'insolvent bank,' including all depositors, excepting any liability to stockholders thereof. The liabilities of said 'insolvent bank' were to be paid off without deduction or discount, and the 'Guaranty Bank' was to carry out all contracts of said 'insolvent bank,' and to conduct, at its own expense, all suits which said 'insolvent bank' was a party; and defend at its expense all suits to which 'the commissioner' or his liquidating agent, or said 'insolvent bank' should be made parties, etc.

"9. In addition to the above contract, it was also agreed orally that as part of the consideration of the written contract that 'the commissioner' would institute and prosecute in his name as such commissioner all suits that might be necessary to recover the assessment of 100 per cent. that he had made against the stockholders, and would pay same over to the 'Guaranty Bank.' The 'Guaranty Bank' could employ a lawyer and file suits in the name of 'the commissioner,' but it was to pay all expenses, etc.

"10. May 12, 1922, Mr. Ed. Hall, then 'the commissioner,' in pursuance of that verbal contract, instructed Ed. J. Hamner, an attorney of Sweetwater Texas, to use his name in filing suits against stockholders of said 'insolvent bank' for the collection of the assessment made by him, with the understanding that the 'Guaranty Bank' would pay all expenses. And on September 21, 1922, Mr. J. L. Chapman, the

plaintiff herein, successor to Mr. Hall, did likewise."

The brief of the appellee also so fully and satisfactorily answers the several contentions of appellant that we adopt this much of it as an expression of our own conclusions upon the questions raised:

[1] "The cause of action sued on was created by the 16th section of art. 16 of the Constitution, adopted in 1904.

"In pursuance of this constitutional provision, the Legislature in 1905 passed section 59 (Acts 1905, p. 511, Vernon's Complete Statutes, art. 552), which provides that: 'If default shall be made in the payment of any debt or liability contracted by any bank * * * each stockholder of such corporation * * * shall be personally liable for all debts of such corporation * * * to an amount additional to the par value of such shares so owed'; and also section 9 (Acts 1905, p. 511; article 459, Vernon's Complete Statutes), which provides: 'The Commissioner may, if necessary to pay the debts of such state bank, enforce the individual liability of the stockholders.'

"This section 9 is copied from the National Banking Act (section 5234, Fed. Stats. Ann., vol. 5, p. 170 [U. S. Comp. St. § 9821]), and section 59 is analogous to section 5151 of the national act (U. S. Comp. St. § 9689), and our state courts have uniformly held that our Legislature adopted the acts of the federal Congress with reference to these particular questions, and, therefore, the construction of such federal acts by the Supreme Court of the United States was also adopted as part of the state law. Collier v. Smith (Tex. Civ. App.) 169 S. W. 1111; McWhirter v. First State Bank (Tex. Civ. App.) 182 S. W. 684; Stringfellow v. Patterson (Tex. Civ. App.) 192 S. W. 557; Austin v. Campbell (Tex. Civ. App.) 210 S. W. 278; Brooks v. Austin (Tex. Civ. App.) 206 S. W. 725.

"What then had been the construction placed upon these statutes by the United States Supreme Court?

"First. 'It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their liability, and whether the whole or a part; and if only a part, how much shall be collected. These questions 'are referred to his judgment and discretion, and his determination is conclusive. The stockholder cannot controvert it. It is not to be questioned in the litigation that may ensue.' Kennedy v. Gibson, 8 Wall. (75 U. S.) 498–507, 19 L. Ed. 476.

"The foregoing decision of Kennedy v. Gibson has been uniformly followed and adhered to, and has become the settled law. Casey, Rec'r, v. Galli, 94 U. S. 673–680, 24 L. Ed. 169; U. S. v. Knox, 102 U. S. 422–426, 26 L. Ed. 217; Germania Bank v. Case, 99 U. S. 628–635, 25 L. Ed. 450; Bushnell v. Leland, 164 U. S. 684–685, 17 Sup. Ct. 209, 41 L. Ed. 598; Christopher v. Norvell, 201 U. S. 222–224, 26 Sup. Ct. 502, 50 L. Ed. 735, 5 Ann. Cas. 740.

"In this Casey, Receiver, v. Galli Case the United States Supreme Court said:

" 'If the receiver intends to violate his duty in discharging the trust confided in him, the remedy must be sought in another proceeding. It cannot avail the defendant in this action.'

"[2] Second. 'Creditors must seek their remedy through the comptroller in the mode prescribed by the statute; they cannot proceed directly in their own names against the stockholders or debtors of the bank. The receiver is the statutory assignee of the association, and is the proper party to institute all suits; they may be brought both at law and in equity, in his name, or in the name of the association for his use. He represents both the creditors and the association, and when he sues it is not necessary to make either a party to the suit.' Kennedy v. Gibson, supra; Bank of Bethel v. Pahquioque Bank, 81 U. S. (14 Wall.) 383–402, 20 L. Ed. 844.

"Our state courts have held: (1) The question as to the amount to be assessed against the stockholder, and when he is to be required to pay, is within the discretion and judgment of the commissioner, and his determination is conclusive. Collier v. Smith; McWhirter v. Bank; Stringfellow v. Patterson; Brooks v. Austin; Austin v. Campbell, all supra.

"(2) The assessment by the commissioner is a debt certain in its amount, and is a primary and not a secondary obligation. Stringfellow v. Patterson, supra.

"(3) The technical and legal liability of the stockholders for the debts of the bank is to the commissioner for the benefit of the creditors. Collier v. Smith, supra. It is a trust fund to be devoted to all the creditors of the bank. McWhirter v. Bank, supra.

"(4) When the commissioner has exercised the power given him to institute and maintain a suit against the stockholders, the authority has gone forth and is not abated, or presumptively revoked, by a change of officers. McWhirter v. Bank, supra.

"(5) The commissioner having taken charge of the bank, the question of its solvency or technical insolvency is a foreclosed proposition. McWhirter v. Bank, supra.

"(6) It is not necessary to allege or prove the amount of the bank's indebtedness. The right of the commissioner to take charge of the bank and proceed to enforce the liability of the stockholders is complete. Stringfellow v. Patterson, supra.

"(7) It is no defense to an action by the commissioner against a stockholder to enforce his personal liability, that all the liabilities of the bank have been paid, or that the assets and money collected and collectible belonging to the bank are sufficient to pay its debts, court costs, liquidation fees and expenses of every character; or that the stockholder is willing to pay, and tenders into court, enough money to pay all the bank's debts, court costs, etc. Brooks v. Austin, supra. The determination of the commissioner that it is necessary to enforce the liability of the stockholder to pay the debts of the bank cannot be questioned.

"In other courts it has been held that a stockholder can assert none of the following defenses to an action for an assessment against him, to wit: (A) That the assessment was unnecessary, but only needed to make good losses of the receiver in managing the affairs of the defunct bank. De Weese v. Smith, 106 Fed. 438, 45 C. C. A. 408, 66 L. R. A. 975.

(B) That the receiver intends to, or has violated his trust, or that the receiver has decided to pay a large amount of claims against the bank for which the bank is not responsible. Casey v. Galli, bottom page 307. (C) That aside from invalid claims there are means enough in the receiver's hands to meet the liabilities of the bank. Casey v. Galli, supra. (D) That the assessment was larger than was necessary to pay the debts. O'Connor v. Witherby, 111 Cal. 523, 44 Pac. 228.

"We assert, therefore, under the authorities cited, none of which have ever been questioned, criticized, or overruled, that when plaintiff proved, as he did, (1) that he was the commissioner of insurance and banking of the state of Texas, and as such took charge of the First State Bank of Bronte, Texas, on January 11, 1921, same having been placed in his hands by the board of directors of said bank in the manner provided by law; (2) that said bank was insolvent; (3) that he levied and declared necessary an assessment of 100 per cent. on all stockholders of said bank on January 23, 1921; (4) that defendant owned on December 15, 1921, ever since and thereafter, 24 shares of the capital stock of said insolvent bank of the par value of $2,400—none of which facts are questioned by appellant—that plaintiff was entitled to recover of defendant that sum with interest from January 23, 1921, and that defendant could not be heard to question the right of plaintiff to recover, for the reason that he had breached his trust and conveyed the fund to be recovered to the 'Guaranty Bank'; for it was the duty of the defendant to pay said assessment, and such defense was not available in this suit.

"[3] The cause of action made the basis of this suit did not exist at common law, nor was the remedy asserted herein given by that law. As said by the United States Supreme Court (U. S. v. Knox, 102 U. S. 422, 26 L. Ed. 216), referring to the personal liability of a stockholder in a national bank, 'by the common law the individual property of the stockholder was not liable for the debts of the corporation under any circumstances. Here the liability exists by virtue of the statute, and the assent of the corporator to the provisions, given by the contract which they entered into with Congress in accepting the charter.'

"The personal liability of a stockholder in a Texas state bank 'for all debts of such corporate body * * * to an amount additional to the par value of such shares of stock so owned,' by such stockholder, was created in 1904 by article 16, § 16, of the Constitution, and did not exist prior thereto.

"The liability of appellant as a stockholder in 'said insolvent bank' has its origin and arises under the Constitution, and it is therefore measured and fixed by the Constitution. Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626; McKusick v. Seymour, 48 Minn. 158, 50 N. W. 1114.

"While a remedy might have been worked out in equity, it was proper, if not necessary, that a statute should be passed to make more effectual the liability thus secured by the Constitution, and therefore article 459 was enacted, providing that the commissioner may enforce the constitutional liability of the stockholder. This statute confers on him as a quasi as-

signee and representative of the creditors, the authority to maintain the necessary action. Bernheimer v. Converse, 206 U. S. 534, 27 Sup. Ct. 755, 51 L. Ed. 1176.

"The commissioner is the statutory assignee of the bank, and is the proper party to institute all suits. Collier v. Smith, supra. He may bring the suit in his own name, or in the name of the bank. McWhirter v. Bank, supra. Creditors cannot sue directly in their own names against the stockholders or debtors of the bank, but must seek their remedy through the commissioner in the manner prescribed by statute. Casey v. Galli, supra; Collier v. Smith, supra.

"No one but the commissioner has the right to bring the action. 20 Ruling Case Law, p. 664, section 4; Emery v. Worcester, 137 Wis. 284, 118 N. W. 807; Harrigan v. Gilchrist, 121 Wis. 127, 99 N. W. 909.

"Being expressly authorized by statute, he needs no title under the substantive law, to the cause of action which he sets up. His right of action arises directly out of the remedial statute, and exists by virtue of it. 30 Cyc. 95.

"The special liability of defendant herein (the cause of action sued on) being created by the Constitution and statutes passed in pursuance thereof (article 553), and the special remedy to enforce that liability being provided by the same law (article 459), to wit, suit by 'the commissioner,' it is well-settled law that such remedy and that alone must be employed. 7 Corpus Juris, 511, § 85; 1 Ruling Case Law, p. 323, § 9; Pollard v. Bailey, 87 U. S. (20 Wall.) 520, 22 L. Ed. 376; Bank v. Francklyn, 120 U. S. 747, 7 Sup. Ct. 757, 30 L. Ed. 825; Stewart v. Ry., 168 U. S. 448, 18 Sup. Ct. 105, 42 L. Ed. 537; 25 R. C. L. 229; Dallas Bank v. U. S., 19 Wall. 227, 22 L. Ed. 80; Globe Newspaper v. Walker, 210 U. S. 356, 28 Sup. Ct. 726, 52 L. Ed. 1096; Evans v. Nellis, 187 U. S. 271, 23 Sup. Ct. 74, 47 L. Ed. 175; F. & M. Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 199; Barnet v. Muncie Bank, 98 U. S. 555, 25 L. Ed. 212; Arnson v. Murphy, 109 U. S. 238, 3 Sup. Ct. 184, 27 L. Ed. 920; Middletown Bank v. Toledo Ry., 197 U. S. 394, 25 Sup. Ct. 462, 49 L. Ed. 803.

"The necessary effect of the decisions of our own courts, as well as those of other states having similar statutes as to the liquidation of insolvent banks, is that the property of an insolvent bank is in custodia legis. See, also, Hanchett v. Waterbury, 143 Ill. 321, 32 N. E. 196; In re Mann, 32 Minn. 60, 19 N. W. 347.

"These authorities establish beyond doubt the proposition that 'the commissioner' is the only person authorized to institute and maintain this action. Hence the statute and decisions cited by appellant as to the authority of plaintiffs having no title to the cause of action to prosecute a suit have no application whatever in cases of this character.

"The decision cited by appellant, Cleveland & Cameron v. Heidenheimer, 92 Tex. 109; Ins. Co. v. Coffee, 61 Tex. 287; Winn v. Ry., 69 Wis. 52, 33 N. W. 593; Ry. v. Freeman, 57 Tex. 156, were all rendered prior to the enactment of the banking laws under construction herein, article 459 of which prescribes that 'the commissioner' must bring such suits as this; and those decisions rest upon the con-

struction of articles 582 and 584, Vernon's Statutes, which have been held to have reference to the Negotiable Instruments Act and causes of action arising thereunder, National Bank of Commerce v. Kenney, 98 Tex. 293, 83 S. W. 371; whereas this suit is governed by article 459.

"The cause of action in this case, the parties and the entire remedy and procedure herein, is purely statutory and governed solely by the provisions of the Texas banking laws, and as said by our Supreme Court in Kidder v. Hall, 251 S. W. 500, 'they are to be interpreted and construed by its own language and that of the Constitution, and not by the Negotiable Instruments Act.'

"As a statutory plaintiff 'the commissioner' sues for the use and benefit of the creditors of said insolvent bank.

"The 'Guaranty Bank' paid off, satisfied, and discharged all debts, liabilities, and obligations of said 'insolvent bank' and became the one and only creditor of said bank. Its action created no new debt. It simply changed the liabilities due to several creditors to a single liability to the 'Guaranty Bank,' the debt remaining the same; for which debt all the assets of the said 'insolvent bank' stood pledged, and the stockholders were liable therefor, and the 'Guaranty Bank' became and was subrogated to all the rights all the creditors had to have the stockholders' liability enforced, and the fund obtained therefrom applied to the payment of said debts. Harris v. Briggs (C. C. A.) 264 Fed. 731; George v. Wallace, 135 Fed. 286–295, 68 C. C. A. 40; Wyman v. Wallace, 201 U. S. 240–242, 26 Sup. Ct. 495, 50 L. Ed. 741; Aldrich v. Bank, 176 U. S. 618, 619, 20 Sup. Ct. 498, 44 L. Ed. 611.

"If it be true that the sale is void, for any reason, then the right of 'the commissioner' to collect the money for the benefit of all creditors remains unquestioned, and the authority of 'the commissioner' to sue as plaintiff is given by statute. Article 459.

"If such sale is irregular or voidable only, then it is to be treated as a valid sale, until by proceedings in the proper tribunal, in which the order to make the sale was issued, the error is corrected. In no view of the case is it a matter which vitally concerns the appellant which is liable for the assessment; nor does it materially affect the merits of the obligation resting upon it under its liability as a shareholder. It is a material and vital question only as between the creditors and 'the Commissioner,' and the respective rights and obligations of these parties cannot be litigated in this action. Schaberg Estate v. McDonald, 60 Neb. 493, 83 N. W. 737.

"[4] Appellant cannot attack collaterally the judgment of a court having jurisdiction of the parties and the subject-matter, and the power to render the judgment. Note to Koontz v. Bank, 16 Wall, 106, 21 L. Ed. 465, and authorities cited.

"Here the court had jurisdiction of 'the commissioner,' and of said 'insolvent bank' by their voluntary appearance; and it has jurisdiction of the subject-matter and power to render the judgment by virtue of article 458, Revised Statutes. Jurisdiction of said 'insolvent bank' included the stockholders (Sanger v. Upton, 91 U. S. 56–64, 23 L. Ed. 221, 222) who 'in view

of the law are before the court in all the proceedings touching the body of which they are members' (Sanger v. Upton, supra). And such stockholders cannot question the decree. Hawkins v. Glenn, 131 U. S. 319–326, 9 Sup. Ct. 739, 33 L. Ed. 191).

"There was neither allegation made, nor proof offered to show, that appellant's rights were in any wise changed, altered, increased or diminished by the sale or transfer in question. It was shown that the tribunal provided by statute so to do (article 458) had decreed that all the assets of said insolvent bank, including the stockholders' assessment, were not sufficient to discharge the liabilities of said insolvent bank, and that it was necessary to add thereto $30,000 in cash out of the state guaranty fund in order to pay off and discharge the liabilities.

"The obligation of 'the commissioner' to enforce the individual liability of the stockholders, after determination of the necessity therefor, continues under article 459 for the benefit of whomsoever is entitled to the proceeds realized from such enforcement. This is a statutory duty, and gives rise to a quasi contract in favor of the person or persons entitled to the proceeds of the collection. If 'the commissioner' paid the debts, or caused them to be paid, by a sale of the assets, including the statutory liability of the stockholders, his obligation to enforce the individual liability of the stockholders in favor of the purchaser would continue, in the absence of an express or implied contract, and this liability would be a quasi contract performable by 'the commissioner,' as the statute vests in 'the commissioner' alone the authority to enforce this liability, and does not vest it in any one else, particularly in the assignee or purchaser.

"[5] But the entire contract and agreement between 'the commissioner' and the 'guaranty bank' was not included in the written contract. In addition to the consideration stated in the written contract upon the part of 'the commissioner,' it was agreed that he, as such commissioner, would call for the services of the Attorney General's department, and would institute and prosecute in his name as such commissioner all suits that might be necessary to recover the assessment of 100 per cent. that he had made against the stockholders of the First State Bank, and would pay the same over to the credit of the 'Guaranty Bank'; or, if the bank preferred so to do, it could employ a lawyer to file and conduct such suits in 'the commissioner's' name and the bank was to pay all court costs, traveling and hotel expenses for the attorney, and his fees for representing 'the commissioner'; and that department was not to become liable for any expenses incident to, or incurred in, the recovery or collection of such assessments against the stockholders. 'The commissioner' was to furnish all necessary documents or evidence of the acts of 'the commissioner' regarding the First State Bank as would be needed to prosecute such suits and to furnish testimony showing such acts without cost to the 'Guaranty Bank,' and was to take any and all necessary legal steps to enforce the liability of stockholders of the First State Bank when called upon by the Guaranty State Bank so to do. These facts were established by pa-

rol as well as documentary evidence, i. e., letters of the former commissioner and of the plaintiff authorizing and directing Judge Ed. J. Hamner to institute all suits necessary, to enforce the personal liability of stockholders in accordance with, and carrying out said agreement.

"This evidence, parol and documentary, was admissible to prove a valid contemporaneous oral agreement as to matters on which the written contract is silent, which is not inconsistent with its terms, but rather explanatory thereof, and in accord therewith. 4 Wigmore on Evidence, § 2430; 2 Greenleaf on Evidence, §· 282; 3 Jones on Evidence, § 439; 2 Page on Contracts, § 1197; 6 Ruling Case Law, p. 856; Gibson v. Texas Co. (Tex. Civ. App.) 239 S. W. 676; Wilson v. Enfield (Tex. Civ. App.) 249 S. W. 532."

The views thus quoted with approval require an affirmance of the trial court's judgment; that order has been entered.

Affirmed.