# CHARLESTON.

CLARK, TRUSTEE, *v*. BANK OF UNION *et al.*

Submitted February 6, 1912.    Decided May 13, 1913.

1. BANKS AND BANKING—*Insolvency—Assets in Hands of Trustee.*
    The liability of a bank's officers for gross neglect of duty and wilful mismanagement of its affairs, and the double liability of stockholders, are both assets in the hands of the trustee of an insolvent bank, to be administered for the benefit of its creditors.  (p. 493).

2. SAME—*Insolvency—Administration of Assets.*
    It is proper to administer both of said assets in a suit

brought by the trustee against the bank, its stockholders and creditors.   (p. 494).

3.   SAME—*Insolvency—Enforcement of Liability of Officers.*
   If the trustee, by his bill, does not seek to enforce the officers' liability, the defendant stockholders may do so by answers in the nature of cross-bills.   (p. 494).

4.   SAME—*Insolvency—Liability of Officers and Stockholders.*
   In such suit to which all the parties interested are parties, in order that the court may do complete equity, the extent of the officers liability should be ascertained before assessing any portion of the double liability upon the stockholders.   (p. 494).

Appeal from Circuit Court, Monroe County.

Suit by R. L. Clark, Trustee, against the Bank of Union, A. E. Johnson, and others.   From a decree for plaintiff, defendant Johnson and others appeal.

*Reversed and Remanded.*

*John W. Arbuckle,* for appellants.

*J. H. Crosier, R. Kemp Morton, T. N. Read,* and *Rowan & Meadows,* for appellee.

WILLIAMS, JUDGE:

The Bank of Union becoming insolvent, its stockholders met on the 29th of February, 1908, and passed a resolution authorizing and empowering the president of the bank to make a conveyance of all of its assets to R. L. Clark, trustee, for the benefit of its creditors.   Pursuant to the resolution, the president, on the same day, made a conveyance of all the assets to said trustee.   In August following, the trustee brought this suit, in the circuit court of Monroe county, making the bank, its stockholders and creditors parties defendant to his bill.   He avers the bank's insolvency, and the consequent necessity of requiring the stockholders to pay a portion of their double liability in order to procure funds with which to pay the creditors.   He later filed an amended bill.   Among other things, he prays that the assets of the bank in his hands be collected, administered and disbursed under the order and direction of the court; that the stockholders, who are liable, be assessed in the manner directed by law, and that a sufficient amount of money be thereby raised to pay off the indebtedness of the bank, and for general relief.

A. E. Johnson, John Osborne and a few other stockholders filed answers, in the nature of cross-bills, charging the directors and officers of the bank with gross neglect and mismanagement of the corporation's affairs, as the cause of its failure, and prayed that the amount of their liability might be ascertained and en· forced. They aver that the cashier was a defaulter for a num· ber of years prior to the bank's assignment, and that this fact was known to the directors; and charge that the directors had made no examination of the affairs of the bank from 1891 to 1905, and that they negligently permitted a system of book· keeping which showed that the bank had on hand a surplus, when in reality there was a deficit. They also charge that the president of the bank was permitted to discount paper at the bank without security, or with less security than the by-laws of the bank allowed; that Allen Caperton, another director, was permitted to borrow large sums of money in the same manner, and to overdraw his account more than five thousand dollars; and that the president was permitted to endorse paper for the cashier, and the cashier for the president, with full knowledge of the directors and in violation of the by-laws of the bank. In solvency of the bank is not denied.

The court sustained a demurrer to the original and amended bills, and held them bad in so far as they sought to enforce the double liability of the stockholders; and also sustained a de· murrer to the cross-bill answers filed by A. E. Johnson, John Osborne and others, and dismissed them. From that decree they have appealed.

When the court pronounced its decree, there was pending in the same court a suit brought by H. B. and L. B. Dunn, the two largest creditors of the bank, for the purpose of enforcing the double liability against the stockholders. These creditors had been made parties defendant to the original bill, but had not appeared. They brought their suit more than a year after the trustee's suit was brought. The same parties were parties to both suits. The trustee and a number of the stockholders filed their several pleas in abatement to the bill in the second suit, setting up the pendency of the former suit by the trustee. The court struck out these pleas, and heard the two causes together, and referred them to a master commissioner for an accounting. The decree sustaining the demurrers and dismissing the cross-

bills settle the principles of the cause. It is, therefore, an appealable decree. What is thereafter done will only be done in carrying out, or executing the court's decrees.

The bank being insolvent, the double liability of the stockholders was properly enforcible by the trustee, for the benefit of the creditors, and it was error to sustain the demurrer to the trustee's bill because it sought to enforce that liability.

If the directors and officers of the bank had incurred liability on account of gross neglect and wilful mismanagement of the bank's business, that liability was also an asset of the bank, enforcible by the trustee for the benefit of creditors, and it was error to dismiss the cross-bill answers of those stockholders who asked that it be ascertained and administered for the benefit of the creditors.

Both of the points, above stated, were decided by us in the recent case of *Benedum* v. *Bank,* 72 W. Va. 124, 78 S. E. 656, and an elaborate discussion af them will be found in the opinion prepared by Judge POFFENBARGER in that case. We, therefore, deem an extended discussion of them here unnecessary. The officers' liability is a primary asset which the bank itself, or its stockholders, may enforce, even for the benefit of the bank. The stockholders, therefore, had a right to have such liability ascertained and enforced in order that they might be relieved, *pro tanto,* from the payment of their double liability; which is only a secondary, or conditional asset, and never enforcible by the bank for its own benefit. It becomes an asset only in case of insolvency of the corporation, and is enforcible only for the benefit of creditors.

Having all parties interested before it, a court of equity will generally administer complete relief. It could have done so in this case by ascertaining the extent of the directors' liability, if any in fact should be shown to exist, and applying it, together with other assets belonging to the bank, to the payment of its debts; and, if they were found to be insufficient to satisfy the creditors, the stockholders could then be assessed a sufficient amount to pay off the debts, not to exceed the par value of their stock.

Says Justice Bradley in *Graham* v. *Railroad Co.,* 102 U. S. 161: "When a corporation becomes insolvent, it is so far civ-

illy dead, that its property may be administered as a trust fund for the benefit of its stockholders and creditors."

The liability upon holders of bank stock, created by section 78, chapter 54, Code 1906, serial number 2394, commonly called their double liability, is not an asset in the hands of a solvent, going bank. So long as a bank is doing business, and is able to pay its debts, there is no double liability upon the stockholders in favor of the bank. The bank can not enforce it for its own purpose or benefit. But when a bank becomes insolvent, the double liability of stockholders becomes an asset, in the hands of the receiver, or trustee, and he may enforce it for the benefit of the bank's creditors. Bolles, in his recent valuable work on Modern Law of Banking, vol. 2, page 821-2, classifies both the liability of the directors for gross mismanagement, and the double liability of stockholders, as assets in the hands of an insolvent bank for the benefit of its creditors.

We perceive no reason why the receiver, or trustee, of an insolvent bank, who represents both the creditors and the corporation—Alderson on Receivers, sec. 539—should not be permitted to enforce both of these liabilities for the benefit of creditors. The trustee did not ask to have the liability of the officers enforced against them, and therefore the stockholders had a right, being vitally interested, to file their answers in the nature of cross-bills praying for it to be done.

The decisions by the courts of the various states are not uniform on the question of the right of a trustee, or receiver, to enforce the double liability of stockholders. But we think the better reasoning is in favor of their right to do so, in the absence of a statute defining the manner in which it may be done. We so held in the case of *Benedum* v. *Bank, supra*. In addition to the authorities cited in the opinion in that case, we cite the following, supporting the proposition: *Brown* v. *Brink, Receiver*, 57 Neb. 606; *Howarth* v. *Angle*, (N. Y.) 47 L. R. A. 725; *Howarth* v. *Ellwanger*, 86 Fed. Rep. 54; *Howarth* v. *Lombard*, 175 Mass. 570.

By the dismissal of their cross-bill answers, appellants were denied the opportunity to prove the alleged liability of the bank's officers. It was error to deprive them of that right.

Their cross-bills were defective for not specifically naming the officers charged with liability, but that was a formal defect, cur-

able by amendment, and it was error to dismiss them without leave to amend.

We reverse the decrees appealed from, and remand the cause with leave to appellants to amend their cross-bill answers, and for further proceedings.

*Reversed and Remanded.*