### AUSTIN, Banking Commissioner, v. FLEMING. (No. 223.)

(Court of Civil Appeals of Texas. Eastland. Feb. 11, 1927. Second Motion for Rehearing Overruled March 11, 1927.)

**1. Appeal and error** ⬅750(2)—**Assignment complaining of overruling general demurrer held to question overruling three general demurrers to three separate defenses.**

Civil Court of Appeals will regard demurrer in three separate paragraphs, each paragraph demurring generally to particular defense as constituting general demurrer to special answer; hence assignment complaining of court's action in overruling general demurrer is sufficient to question action in overruling three general demurrers to three respective defenses.

**2. Banks and banking** ⬅47(3)—**Agreement with banking commissioner that stockholders paying 100 per cent. assessment would not be required to pay further assessment, if bank was subsequently closed, held invalid (Rev. St. 1925, art. 535).**

Agreement between state bank and commissioner of insurance and banking to effect that stockholders of bank paying 100 per cent. assessment would not be required to pay any other or further assessment, in event bank was subsequently closed and taken over by commissioner, *held* invalid and unenforceable, under Rev. St. 1925, art. 535.

**3. Banks and banking** ⬅63½—**Directors can deliver bank to commissioner of insurance and banking without his consent.**

Directors of bank have right and power under law to deliver bank to commissioner of insurance and banking, irrespective of his wishes or desires.

---

**4. Banks and banking ⬅47(3)—That previous stockholder's assessment, paid under agreement with former banking commissioner, had been appropriated to payment of guaranty fund indebtedness, held no defense to subsequent assessment.**

In suit by commissioner of insurance and banking to enforce statutory assessment against stockholder of insolvent bank that previous assessment, paid under agreement with then commissioner, and deposited as trust fund, had been appropriated to payment of indebtedness for which guaranty fund was liable, *held* no defense, since any alleged wrongful act of commissioner prior to closing of bank did not prevent resort by subsequent commissioner to right to levy assessment against stockholders.

**5. Banks and banking ⬅49(7)—Pleading setting up offset against banking commissioner's suit to enforce stockholders' liability must be sufficient to set up offset against all creditors.**

A pleading to be sufficient to set up any offset against suit by commissioner of insurance and banking to enforce statutory liability of bank stockholders must be sufficient to set up offset against all creditors of bank, and not merely against banking commissioner and guaranty fund.

**6. Banks and banking ⬅15—Stockholder's defense to assessment, alleging commissioner's failure to notify him to present claim for former assessment, held insufficient to show right to protection under guaranty fund law.**

Special defense in banking commissioner's suit to enforce statutory liability of stockholders to effect that payment of 100 per cent. assessment under previous agreement with former commissioner constituted deposit, and that commissioner was estopped to assert any claim because guaranty fund was liable to defendant for such deposit, and commissioner's failure to notify defendant to present claim was responsible for it not having been done, *held* insufficient to sustain conclusion that defendant was entitled to protection under guaranty fund laws, in view of failure to show any right to withdraw such fund from bank in ordinary course of business.

**7. Banks and banking ⬅15—Depositor, to be protected by state guaranty fund, must deliver money subject to his order, and relationship of debtor and creditor must be created.**

In order for a depositor to be protected by the state guaranty fund, he must deliver to the bank money or the commercial equivalent thereof, subject to his order, and by virtue of which action title to money passes to bank, and relationship of creditor and debtor is created.

**8. Banks and banking ⬅49(7)—Stockholder's defense to assessment that previous assessment constituted trust fund, to be applied on stockholder's liability, held insufficient because alleging fund was dissipated.**

Stockholder's special defense to suit by banking commissioner to enforce statutory assessment to effect that 100 per cent. assessment previously paid under agreement with commissioner constituted a trust fund, to be applied on defendant's liability as a stockholder, *held* in-sufficient, in that it alleges that fund was dissipated prior to closing of bank, preventing delivery of trust fund to receiver.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit by Charles O. Austin, Banking Commissioner, against M. H. Fleming. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Spencer & Rogers, of San Antonio, for appellant.

Butts & Wright, of Cisco, for appellee.

HICKMAN, J. On the 19th day of January, 1924, the First State Bank of Eastland, Tex., was closed and taken in charge by J. L. Chapman, commissioner of insurance and banking of the state of Texas. The appellee M. H. Fleming, was the owner of twenty shares of stock in the bank of the par value of $2,000. The suit upon which this appeal is predicated was brought by Charles O. Austin, the successor of J. L. Chapman as banking commissioner of Texas (the title of the office having been changed), against M. H. Fleming to enforce the statutory assessment of $2,000 against him as stockholder in the bank. The answer of the defendant upon which he went to trial was the following special answer:

"And, specially answering herein, the defendant says:

"(1) The defendant admits that it is true, as is alleged in plaintiff's petition, that the First State Bank of Eastland was a banking corporation, incorporated under and by virtue of the general laws of the state of Texas, and that the capital stock of said bank was $100,000, and that the defendant was, at the time mentioned and referred to in plaintiff's petition, the owner of 20 shares of capital stock of said bank, of the aggregate par value of $2,000.

"The defendant represents and avers the fact to be: That during the year 1921 the capital stock of said bank became, and then was, insolvent, all of which was well known to the then commissioner of banking insurance, a predecessor of the plaintiff herein. That during the early part of the year 1921 the officers of said bank, recognizing that it was insolvent, and that any efforts to continue in business as a banking concern would be fruitless, and the then commissioner of banking and insurance was, during the early part of the year 1921, requested to close said bank, and take over its assets and administer them under the laws of the banking laws of the state of Texas. That the then commissioner of insurance and banking represented and stated to the active vice president of said bank, T. L. Overby, that, due to the failure of many state banks, the guaranty fund, provided by law for the depositors of banks operating under the guaranty fund provision of the law, as the First State Bank then was, and had depleted to such an extent that he very much desired that the

First State Bank of Eastland continue in business, if possible; and, notwithstanding the fact that he was then and there requested to take possession of said bank, under the provisions of the said banking law, authorizing the commissioner of insurance and banking to take charge of insolvent banks, and administer the assets for the benefit of the creditors, he insisted that said bank be kept open for business, and operated by its then officers, and then suggested and proposed to the said T. L. Overby, active vice president of said bank, that he make an effort to induce the stockholders of the bank to pay in an assessment of 100 per cent. on the shares of stock owned by them, respectively, and that, if the stockholders would do this, that he, as commissioner of banking and insurance, would appropriate a sufficient amount out of the guaranty fund in the hands of the state banking board, to make good the impairment of the capital stock of said bank. That the said T. L. Overby, active vice president of said bank, as aforesaid, then and there told and informed the then said banking commissioner that said bank was insolvent, and that the stockholders thereof would not, in any event, pay more than one assessment of 100 per cent. on their respective shares of stock.

"That the then commissioner of insurance and banking promised and agreed to, and with, the said T. L. Overby, active vice president of said bank, who was then and there acting for himself, and as agent and representative of the other stockholders of said bank, including this defendant. That the stockholders of such bank, who might or should pay an assessment of 100 per cent. on their shares of stock would not, and should not, again be called upon or required to pay any other or any further assessment on their respective shares of stock, and that such payment so made by them should, in the event said bank should be closed and taken over by the commissioner, be deemed and held to be the only assessment that they would be called upon or required to pay.

"That on, to wit, February 9, 1923, J. L. Chapman, at that time commissioner of insurance and banking, made and entered into a written contract and agreement by and between himself and the directors of the First State Bank, a copy of which is hereto attached, marked Exhibit A, and made a part hereof. That, in so far as the payment of assessments by the stockholders of said bank was concerned, said written contract embraced and set out and added nothing whatever to the previous oral agreements made by him and his predecessors in office. That said written agreement so made and entered into by the said J. L. Chapman, in so far as it referred to the payment of assessments by the stockholders of said bank, and of there being no further liability on such of them as should pay the assessments, the written contract merely embraced in writing the prior and previous oral agreements made by the commissioner of banking and insurance prior to the time the defendant paid the assessment on his stock as hereinafter alleged and shown.

"That some time prior to June 27th defendant was advised that an assessment of 100 per cent. on the stock of the bank had been made, and on, to wit, the 27th day of June, 1922, T. L. Overby, active vice president of said bank, relying upon the aforesaid agreement of the commissioner of banking and insurance, that, in case the stockholders or any of them should pay this assessment, that no other or future assessment would be made on the shares of stock owned by them, and that they would not be called upon, nor required to, pay any further sum or amount, he, the said T. L. Overby, then and there advised this defendant that, if he would pay said assessment of 100 per cent. on the shares owned by him, he would not be called upon nor required to pay any further nor additional assessment on the shares of stock of said bank owned by him. And, relying upon the promise and agreement of the said banking commissioner, so made to the said T. L. Overby, and upon the statements of representations so made to this defendant by the said T. L. Overby, he, the defendant herein, paid to the said T. L. Overby the sum of $2,000, that being 100 per cent. on the par value of the stock of said bank, owned by him.

"That, but for the representations, statements, and agreements so made by the commissioner of insurance and banking of the state of Texas, to the said T. L. Overby, and of the statements or representation made to the defendant by the said T. L. Overby, who made them in reliance upon the previous promise and agreement on the part of the then commissioner of insurance and banking, the defendant would not have paid said sum of $2,000 nor any other sum and amount as an assessment upon his shares of stock, because he then had reason to believe, and did believe, that said bank was insolvent, and, that, but for the promise and agreement so made by the commissioner of insurance and banking to and with the said T. L. Overby, that he would not be called upon to pay an additional assessment in addition to the one which he did pay, he would not, under any circumstances or any conditions have paid 100 per cent. assessment on the shares of stock owned by him.

"By reason of the premises, the defendant says that the plaintiff herein is now estopped to claim or demand the payment of any further or additional sum of or from the defendant.

"(2) Further specially answering herein, the defendant says: That the sum of $2,000 so paid by the defendant to the said T. L. Overby, under the facts and circumstances hereinbefore alleged, was so made under a promise and agreement on the part of the then commissioner of insurance and banking that said sum and amount should, for the protection, both of the department of banking and of the stockholders who would pay such assessments, be carried on the books of the bank as a trust fund deposit, of which this defendant was beneficial owner. And, in accordance with the instructions of the then commissioner of insurance and banking, said sum of $2,000 so paid by the defendant, as well as assessments paid by other stockholders, were entered and carried upon the books of the bank in an account entitled T. L. Overby, 'Treasurer,' and, while said account was carried in the name of the said T. L. Overby, as 'Treasurer,' it was the intention of all parties concerned, including the commissioner of insurance and banking, that said account should be carried in the name of T. L. Overby, Trustee, and the use of the word 'treasurer' instead of 'trustee' was due to inadvertence on the part of the bookkeeper of the bank; that said sum of $2,000 so paid to the said T. L. Overby by defendant, as aforesaid, remained and was carried on the books of

the bank in the name of 'T. L. Overby, Treasurer,' until the bank was finally closed and taken over by the commissioner of insurance and banking.

"That some time after defendant had paid to the said T. L. Overby, vice president of the said bank, the sum of $2,000 to wit, on the 19th day of Jan., 1924, said bank was closed, and its assets taken over by the plaintiff herein by his predecessor in office, for the purpose of administering the same under the provisions of the banking laws of the state of Texas; and at the time said bank was closed, and its assets taken over, for the purpose of administration by the commissioner of insurance and banking for the state of Texas, the said sum of $2,000 so paid to the said T. L. Overby by the defendant, as well as other sums and amounts that had been paid by other stockholders, stood on the books of the bank to the credit of T. L. Overby, Treasurer, as aforesaid;

"That, prior to the time the said banking commissioner closed said bank, and had taken over its assets for administration, he, the commissioner of banking and insurance, appropriated the sum and amount of money then shown by the books of the bank, to be credited to the said T. L. Overby, Treasurer, to the payment of indebtedness and liabilities of the First State Bank, or to other debts and liabilities for which the guaranty fund, created under the state banking law, was liable, and that said commissioner and said guaranty fund were benefited by the said sum of $2,000 so paid to the said T. L. Overby, vice president of said bank, by the defendant to the extent of the full amount thereof.

"The defendant is advised and informed and believes the fact to be that at no time after the commissioner of insurance and banking of Texas closed said First State Bank and took over the assets thereof for administration under the state banking law did he either publish notice requiring parties having claims against the bank to present the same, nor did he mail similar notices to creditors, as required by article 456 of the Revised Statutes of the state of Texas. And defendant says that the said sum of $2,000 so paid by him to the said T. L. Overby, vice president of said bank, being deposited in the name of T. L. Overby as treasurer, was a noninterest-bearing deposit, and entitled to protection under and by virtue of the guaranty provision of the banking law, under which said bank was engaged in business, and operating at the time said deposit was made, and that, had said been published, as required by law, and that had he received the notice, to which he was entitled, he would have duly and seasonably filed his claim with the commissioner of insurance and banking, and, in due course of the administration of the assets of said bank, he would have been paid said sum of $2,000.

"And defendant further believes, and so charges the fact to be, that, had not the said T. L. Overby believed the aforesaid promise and agreement of the commissioner of insurance and banking to have been made in faith, and had he had any reason to believe that the same would have been kept and performed, and that no stockholder, who had paid 100 per cent. assessment on his stock, would be called upon to pay any further and additional assessment, he, as trustee of said fund, so paid in by this defendant, would duly and reasonably have filed a claim with the commissioner of insurance and banking for the repayment out of the guaranty fund of the sum and amount so paid by the defendant; and, by reason of these facts, defendant says that plaintiff is now estopped to assert or claim any demand against him, as an assessment on the shares of stock in said bank, so owned by him, and the defendant further says that, by reason of the facts hereinbefore alleged, the guaranty fund, provided by law for the protection of depositors in state banks operating under the guaranty fund provision of the banking laws of the state of Texas, as was the First State Bank of Eastland at the time he paid his aforesaid assessment was, and is liable to the defendant for the full amount of said sum of $2,000 so paid by him, and he now and here pleads said liability as an offset to plaintiff's demand set up in his petition filed in this cause, and the defendant further says that, by reason of the facts hereinbefore alleged, he has fully paid and discharged all liabilities with which he was charged under law by reason of being a stockholder in said First State Bank of Eastland, Tex., and that the plaintiff now has no just or legal demand against him."

To this special answer of the defendant the plaintiff filed a supplemental petition, containing a general demurrer to each of the defenses and certain special matter in reply to the special defenses. It will not be necessary to embody the special reply of the plaintiff in this opinion.

The case was tried before the court without the aid of a jury, and judgment rendered that the plaintiff take nothing against the defendant. From this judgment the plaintiff has perfected an appeal to this court. The case is now pending before this court upon a motion for rehearing. At a former day in this term the judgment of the trial court was affirmed. Upon a most careful and painstaking consideration of the case, as presented on the motion for rehearing, the court has arrived at conclusions different to any of those expressed in the original opinion, and, for that reason, the original opinion is withdrawn, and this opinion on motion for rehearing is substituted therefor.

[1] Our conclusion is that the general demurrer of appellant to the special answer of appellee should have been sustained by the trial court. The general demurrer, as pleaded, is in three separate paragraphs, each paragraph demurring generally to a particular defense pleaded by appellee, and in this manner each defense pleaded is demurred to generally. We therefore regard the three demurrers as constituting a general demurrer to the special answer of appellee, and conclude that appellant's assignment complaining of the action of the court in overruling his general demurrer is sufficient to call in question the action of the court in overruling the three general demurrers to the three respective defenses pleaded.

[2] By reference to the special answer No. 1 set out above, it will be observed that appellee pleads an estoppel against appellant on

account of an alleged agreement between the bank and the then commissioner of insurance and banking, Ed Hall, to the effect that the stockholders of the bank who would pay an assessment of 100 per cent. on their shares of stock would not be called upon or required to pay any other or further assessment thereon, and that such payment so made by them should, in the event said bank was later closed and taken over by the commissioner, be deemed and held to be the only assessment that they would be called upon or required to pay. This agreement is shown by the pleadings to have been made about three years prior to the final closing of the ·bank for liquidation. That this agreement was not valid and enforceable has been well established by many decisions. Chapman v. Hopper (Tex. Civ. App.) 261 S. W. 166; Markus v. Austin (Tex. Civ. App.) 284 S. W. 326; Delano v. Butler, 118 U. S. 634, 7 S. Ct. 39, 30 L. Ed. 260; Witters v. Sowles (C. C.) 32 F. 130; 3 R. C. L. p. 397, § 27.

[3] For the purpose of the plea of estoppel, it is immaterial that the directors of the bank requested the commissioner to close same, because they had the right and power under the statutes to deliver the bank to the commissioner, irrespective of his wishes or desires.

This special defense was therefore, in substance, that the defendant paid into the bank an assessment prior to the time when it was taken over for the purpose of liquidation by the banking commissioner under an agreement whereby the statutory assessment against stockholders was waived. To sustain this defense would be an effort to permit the bank and the commissioner to waive article 535 of the Revised Civil Statutes. This article fixes the liability of the stockholders of a bank, and was designed for the protection of creditors and other banks operating under the guaranty fund plan. The commissioner of banking is not clothed with such authority by the creditors and the banks owning an interest in the guaranty fund as to bind them in this manner. · The fund provided for in article 535, is in the nature of a reserve or trust fund, to be resorted to only in proceedings in liquidation, and neither the banking commissioner nor the bank, nor both of them together, can estop creditors and member banks of the guaranty fund from asserting this liability of the stockholders.

[4] Another defense specially pleaded by the appellee was in effect that the $2,000 paid by him, as well as the assessments paid by other stockholders, were a special deposit and trust fund carried on the books of the bank in the name of T. L. Overby, Treasurer, and that, prior to the time the banking commissioner closed the bank and took over its assets for administration, he appropriated this money to the payment of indebtedness and liabilities for which the guaranty fund was liable, and that the commissioner and guar-

anty fund were benefited by payment of said fund to the full amount thereof. Wherefore he says that the guaranty fund is liable to him for said sum of money, and such liability is pleaded as an offset to appellant's demand. The reason assigned for sustaining the demurrer to the plea of estoppel apply equally to this pleading. If the agreement whereby this money was paid was invalid and unenforceable, and if the commissioner was without authority to bind creditors and the guaranty fund banks of Texas by his agreement to waive the statutory assessments against the stockholders, certainly any alleged wrongful act of his prior to the closing of said bank could not have the effect of preventing a resort by a subsequent commissioner to his right to levy an assessment against the stockholders in connection with liquidating the bank.

[5] Appellee insists that the case of Delano v. Butler, supra, has no application, because there is no guaranty fund under the federal banking laws, and creditors are therefore directly concerned, whereas in Texas there is a guaranty fund, which is the real party plaintiff herein; and, since it is alleged that this guaranty fund received the benefit of · the payment, the creditors have no right to complain. There is no pleading sufficient to show that the guaranty fund, as such, is the only interested party. The pleading in effect regards the guaranty fund as a kind of entity existing quite separate and apart from the creditors of the bank. A pleading, to be sufficient to set up any offset against the commissioner's suit to enforce the statutory liability of stockholders, must be sufficient to set up an offset against all of the creditors of the bank, and not merely against the banking commissioner and guaranty fund. Appellee's answer was insufficient in that respect.

[6] Still another special defense pleaded by appellee, as will be observed by reference to his answer above set out, is in effect that the sum of $2,000 paid by appellee was deposited in the bank in the name of T. L. Overby as treasurer, as a noninterest-bearing deposit, and entitled to the protecting under and by virtue of the guaranty provisions of the banking laws. The plea further sets out facts showing that the time within which the said claim could be presented by appellee or the trustee, Overby, for full payment as a depositor had not elapsed. Wherefore he says that appellant is estopped to assert or claim any demand against him as an assessment on the shares of stock in said bank, because the guaranty fund owes him, and the failure of the commissioner to notify him or the said T. L. Overby to present their claim was responsible for their not having done so.

[7] We have concluded that, under the facts pleaded by the appellee in his answer, this deposit could not be regarded as an unsecured, noninterest-bearing deposit as pro-

vided in the statute, and, therefore, protected under the guaranty fund. In order for a depositor to be protected by the state guaranty fund, he must deliver to the bank money, or the commercial equivalent thereof, subject to his order, and by virtue of which action the title to the money passes to the bank. Kidder v. Hall, 113 Tex. 49, 251 S. W. 497. The relation of creditor and debtor between the depositor and the bank must be created. Tyler County State Bank v. Rhodes (Tex. Civ. App.) 256 S. W. 947.

There was no pleading in appellee's answer showing any right on the part of appellee to withdraw said fund from the bank in the ordinary course of business, nor were the facts pleaded sufficient to show that the relation of creditor and debtor was created by the transaction. We therefore conclude that the pleading was wholly insufficient to sustain the conclusion therein drawn that appellee's claim was entitled to protection under the guaranty fund laws of our state.

The considerations might lead us to the conclusion that the case should be reversed and rendered against the appellee, but for the fact that there are certain allegations in his answer which were not grouped as a special defense to appellant's cause of action, and are not sufficiently clear to constitute a real defense as pleaded, but which, if supported by the facts, may be a completed defense to plaintiff's suit upon another trial of this case. We refer to the allegations in the answer with reference to the special deposit being a trust fund. This case is being reversed on the insufficiency of the pleadings, and it would not be proper, in view of another trial hereof, for this court to discuss the evidence on the former trial, yet we have very carefully studied this record, and feel justified in stating in this opinion that there is some evidence in the record pointing to the fact that this fund never became a part of the assets of the bank, and did not, therefore, legally pass into the hands of the commissioner upon liquidation.

The evidence referred to is contained in the testimony of T. L. Overby to the effect that $2,000 was delivered to him as trustee by appellee under the agreement with Ed Hall, then commissioner of insurance and banking; that the trustee should hold it unadmixed with the funds belonging to the bank until the sum $100,000 was paid to him by the stockholders. In the event this sum should be paid to the trustee, it was then to be invested in capital stock in the bank, and the commissioner was to appropriate sufficient money from the guaranty fund to make the bank a "clean bank"; but, it being understood that the closing of the bank was inevitable in the event the fund was not raised, it was further agreed that in such event the trustee should apply the money to the payment of appellee's liability as a stockholder. The character of relationship between appellee and the bank was determined at the time the money was paid by him, and not by any subsequent agreements between the directors of the bank and the commissioner, J. L. Chapman.

[8] The pleading is insufficient to warrant this court in affirming the judgment of the trial court on the ground that this is a trust fund because the allegation of the answer is that the fund was dissipated prior to the closing of the bank. If it were, in fact, dissipated, there could obviously have been no trust fund delivered to the receiver of the bank, because the same was not in existence. The very foundation of the rights of the appellee to defend on the ground that money paid by him constituted a trust fund was that such trust fund was still in existence, either as a matter of fact or as a presumption of law, when the bank went into liquidation. The pleading is insufficient on account of the allegation that the fund had been appropriated by the banking commissioner prior to the closing of the bank. The facts indicate that this allegation might not be correct, but that, on the contrary, the only disposition made of this fund was a bank entry by the vice president of the bank, without the knowledge of the trustee, whereby the fund still remained in the bank. The pleading is also insufficient on account of its failure to set out the exact conditions upon which the money was delivered by appellee to Overby.

We do not mean to pass upon the facts, nor to be understood as holding the evidence sufficient to create the relation of trustee and cestui que trust, because we are not passing on the evidence; but we make this observation in view of another trial of this case, and in explanation of our reason for remanding the cause for a new trial.

For the reasons indicated, the opinion of this court heretofore rendered in this cause is withdrawn, and this opinion on motion for rehearing is substituted therefor; the judgment of the trial court is set aside, and the cause remanded for further proceedings herein not inconsistent with this opinion.