## FELLOWS et al. v. SHAW, Banking Com'r.

### No. 1185.

Court of Civil Appeals of Texas. Eastland.

Dec. 8, 1933.

Rehearing Denied Jan. 5, 1934.

Stinson, Hair, Brooks & Duke, of Abilene, Brownell & Gault, of Flint, Mich., and L. L. Bowman, Jr., of Greenville, for appellants.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellee.

FUNDERBURK, Justice.

James Shaw, as banking commissioner, brought this suit against Wm. E. Fellows and J. E. Burroughs as trustees under the will of D. D. Aitken, deceased, to recover a 100 per cent. assessment upon 170 shares of the capital stock in Central State Bank, a banking corporation of Abilene, Tex. Theretofore, on March 23, 1931, said Central State Bank and Farmers' & Merchants' National Bank of Abilene had entered into a contract which by preamble professed a purpose to provide for an orderly liquidation of the former. The contract, among other things, recited and provided for the sale and transfer by Central State Bank to the Farmers' & Merchants' National Bank of all of its assets, and the assumption by the latter and agreement to pay "the amount of the individual deposits, savings deposits, bank deposits, cashier's checks outstanding, bills payable, and re-discounts, as shown by the books of party of the first part on the date that the assets of the party of the first part shall be actually delivered to and accepted by party of second part under the terms of this contract, and party of second part does not assume, nor in any manner obligate itself to pay any other liabilities whatsoever of the party of the first part, and especially does party of second part not assume nor become liable to the share-holders of party of the first part on account of their investment in the capital stock of party of the first part, nor for any contingent nor unknown liabilities of party of first part," etc. In addition to the transfer of all its assets, Central State Bank contemporaneously with said contract, and as recited therein, executed and delivered to second party demand notes aggregating $100,000, one being for $75,000, and five others aggregating $25,000, and further agreed to pay, in addition to said notes, the sum of $10,000 in cash as compensation or liquidation fee for liquidating the business of said bank. The declared purpose of said

'notes was "to support and strengthen" the assets. Other provisions of the contract were: That the assets were to be divided into classes A and B, the first to include those at the time considered by the transferee bank as solvent and acceptable, and those in the other class, doubtful and of undeterminate value, with the right to make transfers from time to time from one class to another, and the requirement that all expenses incurred in connection with the liquidation of class B assets be paid out of class B assets, including the $10,000 liquidation fee, and that: "If and when the party of the second part shall have collected from the assets herein transferred to it an amount sufficient to reimburse itself for the liabilities and obligations herein assumed, and an amount sufficient to pay and satisfy all costs incident to the liquidation of the business of party of first part, including said liquidation fee of $10,000.00, above mentioned, then the residue of such assets and/or the proceeds thereof, if any, shall be delivered to the party of the first part, or its legal representatives."

Of the same date as said contract, C. T. Hutchinson, J. M. Hooks, and Dallas Scarborough, designating themselves as "owners and holders of a large amount of the capital stock of the Central State Bank," executed a written agreement to "guarantee and indemnify the Farmers & Merchants National Bank against any loss by reason of the assumption of said liabilities, and/or by reason of any other obligations undertaken by it as shown by said contract." They particularly guaranteed payment of the $10,000 liquidation fee. Another special provision of the instrument reads: "It is further understood and agreed that all money collected on the assessment to be made by the banking commissioner of the State of Texas upon the stockholders of said Central State Bank is to be applied first pro-rata on the five notes aggregating Twenty-Five Thousand ($25,000.00) Dollars, above mentioned in said contract, and any surplus of such money collected from said assessment, if any, shall then be applied on the note for Seventy-Five Thousand ($75,000.00) Dollars." Said instrument recited that the bank building and lots on which it is situated were to be conveyed by Central State Bank to Percy Jones, designated by the Farmers' & Merchants' National Bank to hold the title. The consideration for said conveyance was $60,000, and it was provided that same was to be credited on general liabilities as said class A assets. It further provided that the fixtures and equipment were to be conveyed to said Farmers' & Merchants' National Bank for $4,621, likewise to be credited on general liabilities as class A assets. It was further provided that as a further security for the performance of the contract of guaranty, the Farmers' & Merchants' National Bank, if necessary to its full indemnity, was empowered to sell all of said property and apply the proceeds of sale on the liabilities with the further provision that the "residue of said property, if any, after payment of such loss and/or deficiencies then remaining, shall be re-conveyed and re-assigned to the respective parties hereto who conveyed or assigned same to said bank hereunder."

The assessment, to enforce which the suit was brought, was made by the banking commissioner April 4, 1931, and notice thereof given, all in due and legal form, unless the assessment was void by reason of the matters urged by the defendants.

From a judgment for plaintiff based upon a verdict rendered in response to a peremptory instruction, the defendants have appealed.

Appellants assign but one error, viz., "The court erred in refusing defendants' request for a peremptory instruction." Under the heading, "Assignments of Error," are paragraphs 1 to 4, inclusive, but each consists of the single assignment of error followed by a supporting reason different from that in each of the others. These reasons are substantially the same as are embodied in the "Propositions Upon Which the Appeal is Predicated." They are (omitting reference to the assignments) as follows:

1. "Where the Banking Commissioner does not take charge of an insolvent bank as required by statute as a prerequisite to his right to enforce stockholders double liability any purported assessment of such liability is void."

2. "Where a bank executed and effects a voluntary general assignment it is void because of the prohibition of Article 531, Revised Statutes of 1925, and notes and agreements of indemnity executed in pursuance thereof are void, and are not 'debts' sufficient to support an assessment of the stockholders of such bank."

3. "Where all assets of a state bank are transferred and sold by the Board of Directors acting alone without the authorization of the stockholders in a regularly called meeting, such sale is void and any rights created by such sale and agreements pertaining thereto are void."

4. "Where the Banking Commissioner has agreed in advance to an appropriation of all sums collected upon the statutory stockholders assessments, the enforcement and collection of such assessments so made constitute a taking of property without due process of law in violation of both State and National Constitutions."

We are of the opinion that none of these propositions requires us to pass judgment upon the validity of the transaction between Central State Bank and the three of its stockholders on the one hand, and the Farmers' & Merchants' National Bank on the other, as reflected in the foregoing statement. The suit is not one brought for the purpose of having

that transaction adjudged to be void. To such an action the Farmers' & Merchants' National Bank, not a party to this suit, would be a necessary and indispensable party. The theory of appellants seems to be that the transaction was void, and so certainly so, as to require no adjudication of the fact, and that, therefore, such invalidity was available as evidence to establish one or more of their alleged defenses against their liability to pay the assessment.

We shall assume, for the purpose of testing the correctness of the trial court's action in refusing to instruct a verdict for appellants, and without deciding the question or expressing any opinion on same, that said transaction was void, for each and all the reasons so ably and plausibly argued by appellants' counsel.

The liability which the suit seeks to enforce is not dependent for its existence upon any act or omission of the banking commissioner. It arises upon undisputed facts from a self-executing provision of the Constitution. Const. art. 16, § 16; Austin v. Campbell (Tex. Civ. App.) 210 S. W. 277, 278 (writ refused); Chapman v. Pettus (Tex. Civ. App.) 269 S. W. 268 (writ refused). The banking commissioner is given statutory authority to enforce such liability, R. S. 1925, art. 455. Also, he has imposed upon him by law certain duties with reference to insolvent banks, among them "to liquidate the affairs of such insolvent bank." Article 453, R. S. 1925. This authority to enforce liability of the stockholders, however, is not necessarily dependent upon his due performance of the duties imposed upon him as a liquidating officer. If, therefore, the banking commissioner, in reference to some of his duties should act without authority of law, or even in direct violation of law, such would not be a defense to a suit seeking to enforce a stockholder's personal liability. In Casey v. Galli, 94 U. S. 673, 681, 24 L. Ed. 168, which was a suit to enforce a stockholder's liability under authority of the federal statute, similar to that given by our statutes to the banking commissioner, it was urged in defense: "That the comptroller has decided to pay a large amount of claims against the bank for which the bank is not responsible, and that, aside from these claims, there are means enough already in his hands to meet the liabilities of the bank." In rejecting this as a defense the court said: "If the receiver intends to violate, or shall violate, his duties in discharging the trust confided to him, the remedy must be sought in another proceeding. It cannot avail the defendant in this action." The same was held in Houston National Exchange Bank v. Chapman (Tex. Civ. App.) 263 S. W. 929, 935 (writ refused). In the last-cited case it was also held: "If it be true that the sale is void, for any reason, then the right of 'the commis-

sioner' to collect the money for the benefit of all creditors remains unquestioned, and the authority of 'the commissioner' to sue as plaintiff is given by statute. Article 459." See, also, Harris v. Briggs (C. C. A.) 264 F. 726.

The transaction claimed to be void, whether void or not, was certainly an admission of insolvency. The fact that before the assessment in question was made, the Central State Bank had ceased to do business as a bank was itself, we think, presumptive evidence of insolvency. If the new obligations of said bank, and of three of its principal stockholders to the Farmers' & Merchants' National Bank were void because of being an essential part of a void transaction, then certainly there could be no contention that the Central State Bank owed no debts. There was therefore present all the facts giving rise to the constitutional liability of the appellants. There only remained as a prerequisite the determination by the banking commissioner that it was necessary in order to pay the debts to enforce the stockholders' personal liability. The performance of this function was shown by the assessment itself.

It is not deemed to have been an indispensable prerequisite to the exercise of his authority to enforce the stockholders' liability that the banking commissioner have taken manual possession of the assets for the purpose of liquidation by him, even though it may have been his duty to do so. The cases cited are authority for the proposition that the statutory receiver is not required to have actual possession of the assets at the very time the determination is made to enforce the stockholders' liability. If not, it would be wholly immaterial, we think, that he may have at some previous time had such possession and afterwards relinquished it, whether rightfully or wrongfully. The statutes provide, under certain conditions, for the officers of a bank to liquidate it. R. S. 1925, arts. 1388, 1389. But, even in such cases the banking commissioner, if he sees fit to do so, may take over the assets for liquidation under a superior authority. It was so held by the Supreme Court in answer to a certified question in Shropshire v. Shaw, Banking Commissioner, 121 Tex. 463, 49 S.W.(2d) 708. Suppose, in such case, the banking commissioner, although he leave the matter of liquidation with the officers of the bank, should determine that it was necessary in order to pay the debts to enforce to some extent, at least, the stockholders' liability? Can it be doubted that he would have full authority to do so? We do not think so. If he would have such authority, that fact would add emphasis to the proposition that the authority given the banking commissioner by statute to enforce the stockholders' liability imposed by the Constitution is something separate and apart

from an exercise of the statutory duties to take possession of the assets of an insolvent bank for the purpose of liquidation, and not dependent, the one upon the other.

It is therefore our conclusion that no error is shown, and the judgment below should be affirmed, which is, accordingly, so ordered.