JAMES SHAW, BANKING COMMISSIONER, (FIRST STATE BANK OF WOLFE CITY, TEXAS) v. M. STRONG.

No. 5942.    Decided July 22, 1936.
(96 S. W., 2d Series, 276.)

*Clark, Harrell & Clark,* of Greenville, and *Ocie Speer,* of Austin, for plaintiff in error.

Sale of obligation due by virtue of an assessment on stock in a defunct bank owned by defendant being made under an order of the district court is not subject to collateral attack, and it was error for the trial court to sustain defendant's general demurrer to plaintiff's petition. The liability of a stockholder under an assessment upon bank stock levied by Banking Commissioner is a property right and the subject matter of a sale and conveyance by the Commissioner, and purchaser of such property right is entitled to enforce such liability by suit in its name or that of the Bank Commissioner. Austin v. Wasaff, 284 S. W., 694; Stringfellow v. Patterson, 192 S. W., 555; Rankin v. Miller, 207 Fed., 602; Matteson v. Dent, 176 U. S., 521, 44 L. Ed., 571; Trozzi v. McColl, 276 S. W., 961.

*L. L. Bowman, Jr.,* of Greenville, for defendant in error.

A stockholder's statutory liability upon assessment by the Banking Commissioner is not a liquidated demand and not an asset of the insolvent bank, and cannot be transferred, as it amounts to the taking of property without due process of law, and the court being without jurisdiction to grant relief the judgment is void and therefore subject to collateral attack. Mason v. Russell, 1 Texas, 721; Discoll v. Shaw, 24 S. W. (2d) 1106; Assets Realization Co. v. Howard, 211 N. Y., 430, 105 N. E., 680; Kennedy v. Gibson, 8 Wall. U. S., 498, 19 L. Ed., 476.

*C. Stanley Banks, Carl Runge,* of Mason, and *J. F. Hair,* of Tyler, filed briefs as amicus curiae.

MR. JUSTICE CRITZ delivered the opinion of the court.

It appears from the petition in this case in the district court that M. Strong was a stockholder in the First State Bank, Wolfe City, Texas, a banking corporation duly incorporated under the banking laws of this State; that this bank failed on the 23rd day of December, 1927; that on the 30th day of December, 1927, the Banking Commissioner levied a 100 per cent

assessment against all of the stockholders of such bank, including Strong; that thereafter the Commissioner, for a valuable consideration, transferred and assigned Strong's stock liability to another; that such transfer and assignment were duly ordered and confirmed by judgment and decree of the District Court of Hunt County, Texas, as provided by law; that Strong has never paid such assessment, and that the plaintiff is now the legal owner and holder of such assessment or stock liability of said Strong, if the aforesaid sale or assignment thereof is now enforceable. The petition contains other allegations, but the ones recited are sufficient for the purposes of this opinion.

When the cause was heard in the district court, a general demurrer to the above petition was sustained on the theory that the stock liability of stockholders in failed State banks was not assignable under the laws of this State, as they existed at the time this bank failed, and at the times the other transactions here involved occurred. On appeal to the Court of Civil Appeals the judgment of the district court was affirmed on the same theory. 35 S. W. (2d) 769. The case is before this Court on writ of error.

Section 16 of Article 16 of our State Constitution, so far as applicable here, provides:

"Sec. 16. * * * * * *

"Each shareholder of such corporate body incorporated in this State, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred. * * *"

R. C. S. of Texas at the time here involved contained the following articles:

"Art. 453. *Powers of Commissioner.*—The Commissioner is authorized to collect moneys, claims and debts due to such insolvent bank and to perform such other acts as are necessary to conserve its assets and business, and to liquidate the affairs of such insolvent bank.

"Art. 454. *May sell property.*—Upon the order of the district court of the county in which such bank was located, if in session, or the judge thereof if in vacation, the Commissioner may sell or compound all bad or doubtful debts, and may sell the real or personal property of such State bank on such terms as the court shall direct.

"Art. 455. *Liability of stockholders.*—The Commissioner may, if necessary to pay the debts of such bank, enforce the individual liability of the stockholders. Suits to enforce such liability may be brought against the stockholders either in the county of the bank's domicile or in the county of the defendant's residence. (Acts 2nd C. S. 1909, p. 406; Acts 1927, 40th Leg., p. 292, ch. 205, sec. 1.)."

It is contended by the defendants in error that under the above constitutional and statutory provisions the "debts" which the Commissioner may sell under Article 454, supra, are only debts due to the bank, and that the liability of the stockholder on his stock assessment is not such a debt. This contention was sustained by the two lower courts. On the other hand, the plaintiff in error contends that the term "debts" as used in such statute includes stock liability. As we view this record, it is not necessary in this case to decide this question. We will now give our reasons for this conclusion.

■■ Under our State banking laws insolvent banks are liquidated by the Banking Commissioner, but under the jurisdiction and supervision of the district court. In such instances the Commissioner is the receiver by operation of law, but he must act under orders and decrees of the district court. A State bank in liquidation becomes a judicial proceeding in such court. Undoubtedly the bank and its stockholders and creditors, as such, are in law all parties to this statutory district court proceeding. Under Article 454, R. C. S., 1925, the Commissioner had the authority under the orders of the district court to sell the debts and assets of the bank. In such instances the orders and decrees of the court are judicial and not subject to collateral attack. Chapman v. Guaranty State Bank (Comm. of App.), 267 S. W., 690. When the power of the district court was invoked in this instance, to order and confirm the sale of this stock liability, such court was called on to perform a judicial act. It did order and confirm such sale. It therefore did perform a judicial act. When the district court was petitioned to order and confirm such sale, it necessarily had to judicially determine if the thing petitioned to be sold was subject to sale under our banking law. As already stated, the court did order and confirm such sale. It therefore did judicially determine that the thing or liability sold was subject to sale. All parties at interest, the bank, the bank stockholders as such, and the bank's creditors as such were parties to the proceeding. They were, and are, therefore all bound by such decrees, in this a collateral attack.

For the reasons stated, we are of the opinion that the Court of Civil Appeals erroneously decided this case. The judgments of the district court and of the Court of Civil Appeals are accordingly reversed, and the cause remanded.

Opinion delivered July 22, 1936.

### CONCURRING OPINION.

MR. CHIEF JUSTICE CURETON.

I concur in the judgment entered by my associates in this case. I am also strongly inclined to the view that the opinion upon which that judgment is based is a sound one. However, I am of the opinion that the District Court had the power to enter the decree entered by it, and, if so, there can be no doubt as to the correctness of the judgment here entered by the Court.

The one question here involved is whether or not the Banking Commissioner was authorized by law to sell the stockholder's liability levied against the defendant in error as a stockholder of the first failed bank, the *First State Bank of Wolfe City,* under the orders of the court, to the second failed bank, the *First State Bank, Wolfe City,* Texas. The Court of Civil Appeals held that the right did not exist, and affirmed the judgment of the trial court. 35 S. W. (2d) 769.

The case is before us by writ of error. I am of the opinion that the judgments of the District Court and Court of Civil Appeals are erroneous, for reasons now to be stated.

Prior to November, 1904, State banking institutions were prohibited by the Constitution of the State. However, by the constitutional amendment adopted November 8, 1904, and proclaimed December 9, 1904, their creation was authorized. This amendment became Section 16, Article 16, of the Constitution, and reads:

"The Legislature shall by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of State supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof.

"Each shareholder of such corporate body incorporated in this State, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred.

"No such corporate body shall be chartered until all of the authorized capital stock has been subscribed and paid for in full in cash. Such body corporate shall not be authorized to engage in business at more than one place which shall be designated in its charter.

"No foreign corporation, other than the national banks of the United States, shall be permitted to exercise banking or discounting privileges in this State. (Sec. 16, Art. 16, adopted election November 8, 1904; proclamation December 29, 1904.)"

Under this amendment it became the duty of the Legislature to authorize the creation of banking corporations. In the performance of this duty, however, the section itself sets forth certain mandatory limitations, some of which were: (1) That they should provide for a system of State supervision; (2) that the system so provided "will adequately protect and secure the depositors and creditors thereof"; (3) that each shareholder should be "personally liable for all debts of such corporate body" in an amount additional to and equal to the par value of his shares.

It is to be noted that the shareholders' liability provision is in broad, general terms, and makes the shareholders "*liable for all debts*"; not to the creditors jointly or in severalty, but simply liable "*for all debts.*" As to *who* might enforce this liability, *when* it might be enforced, and *how* it might be enforced, are not specified in the organic act; but these were left for legislative determination. 9 Texas Jur., p. 444, sec. 30; Michie on Banks and Banking, Vol. 2, ch. 5, sec. 173. The Legislature did provide a complete banking system for the State. As a part of that system the Legislature created a Banking Department, the Banking Board,—composed of the Commissioner of Banking, the State Treasurer, and the Attorney General. R. S., Art. 439. In addition, the Commissioner of Banking, as the head of the department, was authorized to appoint and employ examiners, special agents, etc., and to exercise elaborate visitatorial powers over State banks,—all of which are shown in the statutes. R. S., Art. 342 et seq. Among other provisions thus provided by the Legislature are those for closing and liquidation of insolvent banks, and the enforcement of the stockholders' liability for the payment of debts of failed banks. Obviously I cannot quote in this opinion nor give the substance of all the statutes which may have some bearing on the subjects here involved. I refer generally, however, to R. S., Arts. 369, 450, 451, 453, 454, 455, 456, 457, 458, 459, 460, 463.

Article 453 defines the Commissioner's general powers. By it he is authorized to: (a) collect moneys, claims, and debts due the insolvent bank; and (b) perform such other acts as are necessary to conserve its assets; and (c) to liquidate its affairs. In the course of the performance of these duties thus generally specified, Article 455 provides:

"The Commissioner may, if necessary to pay the debts of such bank, enforce the individual liability of the stockholders. Suits to enforce such liability may be brought against the stockholders either in the county of the bank's domicile or in the county of the defendant's residence."

It is quite plain that under this statute the Legislature, in prescribing *who* shall enforce the constitutional requirement as to stockholders' liability, *when* it shall be enforced, and *how* it shall be enforced, has conferred upon the Commissioner the authority to enforce this provision. The Commissioner determines *when* the stockholders' liability shall be enforced,—that is, when in his judgment it is necessary in order to pay the debts of the bank. The Legislature has determined *how* it shall be enforced,—namely, by *suits* against the individual stockholders, either in the county of the bank's domicile or in that of the defendant's residence. This statute plainly carries out the mandate of the Constitution, and is valid. Michie on Banks and Banking, Vol. 2, p. 203, Sec. 182a; Fletcher's Cyc. of Corp., Vol. 13, p. 627, Sec. 6261, p. 927, Sec. 6503. Moreover, when the Commissioner determines that it is necessary to enforce the stockholders' liability, the controversy is at an end. His conclusion is final and cannot be reviewed by the courts in the absence of a direct attack for fraud or mistake. 7 Michie on Banks and Banking, p. 66, Sec. 84; 7 Corpus Juris, p. 776, Sec. 625; Houston Nat. Exch. Bank v. Chapman, 263 S. W., 929; Fletcher's Cyc. of Corp., Vol. 13, p. 593, Sec. 6522, p. 961, Secs. 6524, 6525; Austin v. Guaranty State Bank, 300 S. W., 129; Brooks v. Austin, 206 S. W., 723; Fellows v. Shaw, 66 S. W. (2d) 741; Harris v. Briggs, 264 Fed., 726.

As stated before, the stockholders' liability is not a common law liability, and the creditors of the bank have no common law action for its enforcement. Their remedy lies wholly within the confines of the statute. They cannot file and maintain suits against the stockholders of a failed bank. Houston Nat. Exch. Bank v. Chapman, 263 S. W., 929; Mothersead v. Kelley, 141 Okla., 36, 284 Pac., 65; City of Ada v. Spencer, 121 Okla., 217, 248 Pac., 1005; Fletcher's Cyc. of Corp., Vol. 13, p. 928, Sec. 6505; 2 Michie on Banks and Banking, p. 203, Sec. 182a. Their

remedy is to prove their claims and collect what may be due them through the Commissioner and the court having jurisdiction of the liquidation proceedings, as provided by the statute. The liquidation of an insolvent bank is to be accomplished by the Commissioner's, in general, doing two things. One is the ascertainment of the creditors to whom the failed bank is indebted, and the amount justly claimed by each. R. S., Art. 460. And the other the ascertainment of the assets available for the payment of creditors, and their conversion into such form as to make them available for the payment of dividends in satisfaction of the debts of the bank. R. S., Arts. 453, 454, 455, 460, 463.

Without reviewing at length the various provisions of the statutes governing the liquidation of insolvent banks, I may say that the proceedings are through the district courts; in fact, that during their progress the insolvent estate is in *custodia legis.*

After the date fixed for the presentation of claims, against the insolvent, the Commissioner may declare one or more dividends, but these must be under the direction of the court. Innes v. State Banking Board, 113 Texas, 300, 304, 254 S. W., 117. The statutes make it plain enough that every asset available for the payment of creditors' claims is to be reduced to possession by the Commissioner and used in the orderly pro rata payment of the claims of creditors. If this were not so, then the provisions above referred to could not be effectuated. It is clear, I think, that under the statutes, when an insolvent bank comes into the hands of the Commissioner, the Commissioner *takes title as a statutory receiver* of all the assets available in law, for the liquidation of the bank's debts, including the choses in action against stockholders for liability assessments, that he, as Commissioner, may make against them. Kidder v. Hall, 113 Texas, 49, 251 S. W., 497; Chapman v. Guaranty State Bank, 267 S. W., 690, 693; Austin v. Wasaff, 284 S. W., 694; State Banking Board v. Winters State Bank, 13 S. W. (2d) 391; Austin v. Cochran, 2 S. W. (2d) 1015; McWhirter v. First State Bank, 182 S. W., 682 (writ refused); Austin v. Fleming, 290 S. W., 839; 7 Corpus Juris, p. 735, Sec. 502; 3 Michie on Banks and Banking, p. 36, Sec. 17, p. 145, Secs. 96, 97; Ency. U. S. Sup. Ct. Rep., Vol. 3, p. 184; Tardy's Smith on Receivers (2d ed.), Vol. 2, Secs. 449, 450, 451.

As said by Judge German in the case of Chapman v. Guaranty State Bank, supra:

"In the case of Kidder v. Hall, 113 Texas, 49, 251 S. W.,

497, it was held by the Supreme Court that the property of an insolvent bank, being liquidated by the banking commissioner, is in custodia legis, and that the district court of the county where the bank was located has exclusive jurisdiction of the subject-matter of the liquidation and the custody of the property involved. We think the necessary conclusion from this decision and other cases is that, immediately upon the taking over of an insolvent bank by the banking commissioner, an administration of the estate of such bank for certain purposes is, in effect, opened in the district court of the county where the bank is located, and the commissioner becomes the receiver of such bank by operation of law, exactly the same as if appointed receiver by order of the court, and, in so far as the sale of the assets and property of the bank is concerned, the commissioner must act under order of the court or judge, and is in this respect the arm of the court as though acting under appointment by the court."

In this case, on the one hand the defendant in error says that the *"debts"* which the Commissioner may sell under Art. 454 are only *debts* of the bank, and that the liability of stockholders is not such a debt; while on the other hand the plaintiff in error says that the stockholders' liability is such a *"debt."*

I do not think we are called upon to interpret this statute as in the first instance. It has been in existence a long time. At the time of its enactment, and at all times subsequent, there has been a great contrariety of authorities and decisions touching similar statutes, or those having a similar purpose. An analysis of these conflicting views would now serve no good purpose. Those affording a basis for the construction insisted upon by the defendant in error may be found in the opinion of the Court of Civil Appeals in this case, with additional ones as follows: 6 Thompson on Corporations (3d ed.), Secs. 4811, 4960; Williams v. Carver, 171 Cal., 658, 154 Pac., 472; Conway v. Owensboro, etc., Bank & Trust Co., 165 Fed., 822; Clapp v. Smith, 22 N. M., 153, 159 Pac., 523; Farmers Bank v. Scott, 144 Ky., 575, 139 S. W., 801; Runner v. Dwiggins, 147 Ind., 238, 46 N. E., 580; Andrew v. State, etc., 214 Iowa, 1339, 242 N. W., 62; Johnson v. Adams' Estate, 138 So. Car., 409, 136 S. E., 885. We also list those *contra* as follows: Clark v. Bank of Union, 72 W. Va., 491, 78 S. E., 785, 786; Benedum v. First Citizens Bank, 72 W. Va., 124, 78 S. W., 656, 663; Waldron v. Alling, 73 App. Div., 86, 76 N. Y. Supp., 250; State v. German Sav. Bank, 65 Neb., 416, 91 N. W., 414; Howarth v. Angle, 162 N. Y., 179, 56 N. E., 489, 47 L. R. A., 729; Douglass

v. Dawson, 190 N. E., 458, 130 N. E., 195; Lamar v. Taylor, 141 Geo., 227, 80 S. E., 1085; Harris v. Taylor, 148 Geo., 663, 98 S. W., 86; 7 Corpus Juris, p. 737, Sec. 505, p. 781, Sec. 638; 23 Ruling Case Law, p. 119, Sec. 126; 2 Michie on Banks and Banking, p. 131, Secs. 52, 53; 7 Michie on Banks and Banking, pp. 105, 106, Sec. 115a; 13 Fletcher's Cyc. of Corp., p. 980, Sec. 6533; Bennett, Supt. of Banks, v. Wilkes Co., 164 Geo., 790, 139 S. E., 566; State v. Bank of Rushville, 57 Neb., 608, 78 N. W., 281; Morrison v. Deposit Co., 2 Neb. (Unoff.) 762, 89 N. W., 996; Schaberg's Estate v. McDonald, 60 Neb., 493, 83 N. W., 737; Martin v. Wilson, 120 Fed., 202.

I have examined the above authorities, and have no doubt those listed *"contra"* afford a logical basis for the conclusion that under Art. 454 of the Statutes, the court having in charge the liquidation of an insolvent bank may order or approve the sale of the stockholders' liability, as was done in the instant case. I do not find it necessary, however, to here determine that question.

The contrariety of decisions and authorities above shows that at the time of the enactment of this statute, and its subsequent administration by the State's officers, its meaning was ambiguous and uncertain. In such a case our proper course is to follow the departmental construction, unless that interpretation is clearly erroneous or unsound. 39 Texas Jur., p. 234, Secs. 125, 126. As said by the authority just cited:

"The courts will ordinarily adopt and uphold a construction placed upon a statute by an executive officer or department charged with its administration, if the statute is ambiguous or uncertain, and the construction so given it is reasonable. In other words, the judiciary will adhere to an executive or departmental construction of an ambiguous statute unless it is clearly erroneous or unsound, or unless it will result in serious hardship or injustice, although it might otherwise have been inclined to place a different construction upon the act.

"The rule above stated is particularly applicable to an administrative construction of long standing, where valuable interests or rights have been acquired, or contracts have been made, or where a law that has been uniformly construed by those charged with its enforcement has been reenacted without a change of language."

In addition to the departmental interpretation, the statute has been twice placed in the codifications of the Statutes (R. S., 1911 and 1925) without material change, after its long administration by the departments charged therewith; and

shortly after the decision in the instant case by the Court of Civil Appeals it was amended by express language so as to conform to the departmental construction. Hill v. South Texas B. & T. Co., 73 S. W. (2d) 1043, 1045.

As we understand the matter, the State Banking Board, which includes the Attorney Generals and the Bank Commissioners who have administered the law, and the district courts through which various insolvent banks have been liquidated, have construed Art. 454, quoted above, as authorizing the sale of stockholders' liability assessments by the Commissioner, under orders of the court, as was done in the instant case.

In this case, were we to give this statute an interpretation contrary to that given heretofore by those charged by law with its administration, and in accordance with which no doubt valuable interests and rights have been acquired and contracts made, it would be in direct conflict with the accepted canons of construction. This I can not do. I feel impelled to follow the construction of Art. 454 placed thereon by the officers administering the provisions of the Banking Laws, to the effect that this Article does permit the sale of stockholders' liability assessments by the Commissioner of Banking, under orders of the court, as was done in the instant case; for as Texas Jurisprudence, Vol. 39, p. 235, Sec. 125, says:

"Sound public policy requires the resolving of all doubts in favor of a contemporaneous or practical construction that has been followed with substantial uniformity."

In view of the foregoing, I concur in the opinion of my associates that the orders of the court or judge who approved the sale of the stockholders' liability assessments in this case were decrees which cannot be attacked collaterally, and that this case should be reversed and remanded.

Opinion delivered July 22, 1936.