**KALISKI v. GOSSETT, Banking Com'r.**

No. 10099.

Court of Civil Appeals of Texas. San Antonio.

Sept. 8, 1937.

Rehearing Denied Oct. 6, 1937.

Moursund, Ball, Moursund & Bergstrom, of San Antonio, for appellant.

Johnson & Rogers, of San Antonio, for appellee.

Appellee, Zeta Gossett, acting in his official capacity as Banking Commissioner of Texas, instituted this suit against Dr. S. R. Kaliski, seeking to recover an alleged bank stockholder's assessment. The trial was to the court without the intervention of a jury, and resulted in judgment in favor of the Banking Commissioner in the sum of $4,000.

From this judgment Dr. Kaliski has prosecuted this appeal.

The facts are as follows: The Peoples Finance Company of San Antonio was incorporated on the 24th day of September, 1924, under and by virtue of the provisions of subdivision 29 of article 1121, R.C.S.1911, which is now subdivision 48 of article 1302, R.C.S.1925. On July 13, 1925, it amended its original charter, and took advantage of the provisions of chapter 37 of the Acts of the First Called Session of the 35th Legislature, approved May 25, 1917, and was granted the following general powers (section 4):

"(a) To lend money and to deduct interest therefor in advance at a rate not to exceed six per centum per annum, and in addition to require and to receive uniform weekly or monthly instalments on

its certificates of indebtedness purchased by the borrower simultaneously with the said loan transaction, or otherwise, and pledge with the corporation as security for the said loan, with or without an allowance of interest on such instalments.

"(b) To sell or negotiate bonds, notes, certificates of investment and choses in action for the payment of money at any time, either fixed or uncertain and to receive payments therefor in instalments or otherwise, with or without an allowance of interest upon such instalments.

"(c) To charge for a loan made pursuant to this section one dollar for each fifty dollars or fraction thereof loaned for expenses, including any examination or investigation of the character and circumstances of the borrower, co-maker or surety and the drawing and taking acknowledgment of necessary papers or other expenses incurred in making the loan; no charge shall be collected unless a loan shall have been made as a result of such examination or investigation."

On February 20, 1928, it further amended its charter so as to change its name from Peoples Finance Company to Peoples Industrial Bank.

When the charter was amended on July 13, 1925, its capital stock of $100,000 had been issued and subscribed, but only about $70,000 thereof was fully paid in cash. On or about December 31, 1926, the entire capital stock had been paid for in full, but this was about 18 months after its amended charter had been issued.

■ There is considerable evidence as to how the company conducted its business, and there are many findings of facts by the trial judge on such matters. Most of these findings are challenged by appellant, and a major portion of his brief is directed to a discussion of these assignments, but, as we have concluded that this case must stand or fall upon the powers granted to the company by its charter and the law under which it was organized, rather than upon what powers it exercised or the manner in which it conducted its business, these findings of fact will not here be set forth.

■ Neither do we think it is important that Dr. Kaliski was elected a director, attended the meetings of the stockholders, and of the directors, and was more or less familiar with how the corporation was conducting its business. Either all of the stockholders in this corporation were subject to a stockholders assessment or none were. To us it is unthinkable that a rule might be established whereby stockholders shown to be familiar with the corporation's manner of doing business would be subject to a stockholder's assessment, and those not so familiar would not be subject to such assessment. We will therefore not here set forth the findings and evidence with reference to these matters.

On or about March 26, 1934, the board of directors began to pass resolutions with reference to consolidation with Peoples Investment Company on account of an impairment of the capital stock of the Peoples Industrial Bank, and some time in July, 1934, the Peoples Industrial Bank was actually consolidated with Peoples Investment Company, a separate corporation, and the charter of Peoples Investment Company was amended so as to change its name to Peoples Finance Company. Thereafter, all of the assets of the Peoples Industrial Bank was transferred to the Peoples Finance Company. The stock of the bank was called in from the stockholders, attached to the stubs of the stock book, and new stock was issued to the stockholders in the Peoples Finance Company, there being one share of new stock issued for each three shares of old stock outstanding. Thereafter, the Peoples Finance Company filed its petition in the United States District Court for the Western District of Texas for reorganization under section 77B of the new Bankruptcy Act (11 U.S.C.A. § 207), and, having failed to comply with the provisions of the act, it was automatically adjudged a bankrupt and was referred to the referee, the Honorable R. O. Huff, for liquidation. Mr. Theo. Plummer was appointed trustee for the bankrupt.

Thereafter the Commissioner of Banking, E. C. Brand, applied to the referee to have the assets of the Peoples Industrial Bank delivered to him for liquidation, in accordance with the banking statutes for the liquidation of banks. The application was refused and the commissioner took no appeal from the order, which became final.

On May 14, 1935, E. C. Brand, then Banking Commissioner of Texas, determined that, in order to pay all the debts of Peoples Industrial Bank, it was necessary that the individual liability of the

stockholders of said bank be enforced to the full amount of their liability and thereupon levied an assessment against each and every stockholder equal to the par value of stock held by him.

The general question presented in this appeal is whether or not the Peoples Industrial Bank was such a corporate body with banking and discounting privileges within the meaning of the language contained in section 16, art. 16, of our State Constitution, as to render a shareholder therein subject to a stock assessment as provided for in said section 16, art. 16, of the Constitution, or to such an assessment as is provided for by article 535, R.C.S. 1925, as amended by Acts 1929, 1st Called Sess., c. 60, § 1 (Vernon's Ann.Civ.St. art. 535).

We are confronted in the outset by the fact that the very part of section 16, art. 16, of our State Constitution, which we are here called upon to interpret, was on August 23, 1937, repealed by a vote of the people of this state. See Senate Joint Resolution No. 9 (see Vernon's Texas Session Law Service 1937, p. 104). We are also confronted by the fact that the Legislature during its last session passed an act providing in effect that, in the event the people should repeal section 16, art. 16, of the Constitution, then and in that event all articles of the statutes relating to liability of and assessments against shareholders in state banking corporations should likewise be repealed. See Senate Bill No. 158, §§ 1–4 (Vernon's Ann.Civ. St. arts. 380, 455, 535, and notes). However, the repealing act was passed with a saving clause, and such repealing act can in no way affect this case.

A more serious question is presented with reference to the repeal of that portion of section 16, art. 16, of the Constitution, which provided for the liability of shareholders in corporate bodies having banking and discounting privileges, as the repeal of this constitutional provision is complete and is not protected by any saving clause.

We have concluded that the repeal of this constitutional provision will not abate this cause and that the liability, if any, had fully accrued before such repeal.

This conclusion is fully justified by Pierce Coombes, Petitioner, v. Milton E. Getz, 285 U.S. 434–452, 52 S.Ct. 435, 436, 76 L.Ed. 866, opinion by Mr. Justice Suth-

erland, dissent by Mr. Justice Cardozo. While we are not unmindful of the force and seeming logic of the dissenting opinion, the law of the land is contained in the original opinion, and is expressed in the following clear language: "The right of this petitioner to enforce respondent's liability had become fully perfected and vested prior to the repeal of the liability provision. His cause of action was not purely statutory. It did not arise upon the constitutional rule of law, but upon the contractual liability created in pursuance of the rule. Although the latter derived its being from the former, it immediately acquired an independent existence competent to survive the destruction of the provision which gave it birth. The repeal put an end to the rule for the future, but it did not and could not destroy or impair the previously vested right of the creditor (which in every sense was a property right * * * ) to enforce his cause of action upon the contract." See the many authorities there cited.

Thus we take it that neither the repeal of the constitutional provision nor the statutes relating to shareholders' liability does not abate or otherwise affect the cause before us, but, on the contrary, we must pass upon same as though there had not been any repeal of either the statutory or the constitutional provisions.

We conclude that there could be no liability herein by reason of the provisions of article 535, R.C.S.1925, as amended by Acts 1929, 1st Called Sess., c. 60, § 1 (Vernon's Ann.Civ.St. art. 535). Chapter 37 of the Acts of the First Called Session of the Thirty-Fifth Legislature (1917) especially enumerates the provisions of the statutes relating to banks and banking which shall apply to corporations created under its provisions, and this is tantamount to providing that other articles of such statutes do not apply, and as article 535, which was at that time article 552, Rev.St. 1911 (in so far as the liability provision is concerned), not being one of the articles enumerated, it was thereby in effect excluded as applying to this chapter.

However, it is pointed out that section 16, art. 16, of the Constitution, is self-enacting, and, even in the absence of a statute, all corporate bodies having banking and discounting privileges are subject to the liability provided for in this section of the Constitution. We agree with this contention.

We are thus confronted with the question as to whether or not the Peoples Industrial Bank was a corporate body with banking and discounting privileges. As heretofore stated, the Peoples Industrial Bank was incorporated under the provisions of chapter 37 of the Acts of the First Called Session of the 35th Legislature (1917). The question here presented is, Does this act authorize the creating of a corporation with banking and discounting privileges? We conclude that it does not. In the first place, the caption of the act is not broad enough to include such powers. The caption reads as follows: "An Act concerning Loan and Investment Companies, defining same and providing for their incorporation, powers and supervision, and declaring an emergency."

Next the act (section 2) provides that such corporations may be organized in the same manner as corporations for profit under and by virtue of title 25 of the Revised Statutes (1911), art. 1117 et seq., except as otherwise provided. Title 25 is now title 32, R.C.S.1925 (as amended [Vernon's Ann.Civ.St. art. 1302 et seq.]), and relates to private corporations for profit. If it was the intention of the Legislature to authorize the creation of a banking corporation, the act should have provided for their organization under and by virtue of the title relating to banks and banking. The title on private corporations authorizes the creation of corporations with 50 per cent. of the capital stock paid in while the Constitution, section 16, art. 16, requires that banking corporations can only be created when all stock has been paid for in cash. The act also (section 7) provides that articles 522 to 525, R.S.1911, shall apply to corporations incorporated under the act, thereby precluding, by implication, the idea that article 552, R.S.1911, would apply, which article relates to stock assessments of shareholders of banking corporations. If it had been the intention of the Legislature to authorize the creation of banking corporations, said article 552 should have been made applicable and not have been excluded by implication.

It is contended by appellee that section 16, art. 16, of the Constitution, is self-enacting and would fix the liability of shareholders if in fact the Peoples Industrial Bank was a corporate body with banking and discounting privileges. As above stated, this is undoubtedly true, but we are of the opinion that the law did not grant to the Peoples Industrial Bank banking and discounting privileges. Much is said with reference to what is meant by banking and discounting privileges. We are urged to change the word "and" to "or," and read this phrase "banking or discounting privileges," but we see no justification for such a construction, for unquestionably the word "banking" includes discounting. The words "and discounting" might be treated as surplusage, and the section read to mean that shareholders in banking corporations were subject to a stock assessment, and further that a charter to a banking corporation should not be issued until all of its stock has been paid for in cash.

Our statutes set forth the powers and privileges of a banking corporation. Article 392, R.C.S.1925 (as amended by Acts 1935, c. 6, § 1 [Vernon's Ann.Civ.St. art. 392]), provides in part as follows: "Banking corporations shall be authorized to conduct the business of receiving money on deposit, allowing interest thereon, and of buying and selling exchange, gold and silver coins of all kinds; of lending money upon real estate and personal property and upon collateral and personal securities at a rate of interest not exceeding that allowed by law; and of buying, selling and discounting negotiable and non-negotiable commercial paper of all kinds."

In the case of In re Prudence Company (C.C.A.) 79 F.(2d) 77, 79, we find the following definition of a bank: "Strictly speaking the term bank implies a place for the deposit of money, as that is the most obvious purpose of such an institution"; the opinion continues: "And all of the cases, so far as we are advised, which have construed the words 'banking corporations' as used in the Bankruptcy Act, have regarded the legal power to receive deposits as the essential thing." (Many authorities here cited.)

We are of the opinion that, for the reasons heretofore pointed out, the Legislature, in passing chapter 37 of the Act of the First Called Session of the 35th Legislature (1917), did not intend that loan and investment companies chartered under and by virtue of its provisions should exercise banking and discounting privileges. This is plainly implied by the act. If the Peoples Industrial Bank did exercise banking privileges, such acts were ultra vires and beyond the powers granted to it by law. The power to deduct 6 per cent. on loans

in advance, taken by itself, would not be sufficient to constitute it a banking corporation. In re Bay Cities Guaranty Building-Loan Association (D.C.) 48 F.(2d) 623; Gamble v. Daniel (Greenfield v. Peters Trust Company), 39 F.(2d) 447 (C.C.A.).

Accordingly the judgment of the trial court will be reversed, and, the evidence being fully developed, judgment will be here rendered that appellee take nothing.

SLATTON, J., being disqualified, did not participate in the decision of this case.