**TEXAS BANKERS ASSOCIATION, Central Park Bank and University National Bank, Appellants,**

**v.**

**GOVERNMENT EMPLOYEES CREDIT UNION OF SAN ANTONIO, Appellee.**

**No. 16464.**

Court of Civil Appeals of Texas, San Antonio.

April 29, 1981.

Seagal V. Wheatley, J. David Oppenheimer, Edward C. Mainz, Jr., Oppenheimer, Rosenberg, Kelleher & Wheatley, San Antonio, for appellant.

Rudy A. Garza and Joel H. Pullen, Tinsman & Houser, San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This is a suit for declaratory and injunctive relief brought by the Texas Bankers Association (TBA), Central Park Bank (Central Park), and University National Bank (University) against the Government Employees Credit Union (GECU). The Texas Bankers Association consists of over 1,000 member banks, authorized to conduct banking in Texas under either state or federal charters. Central Park is a state bank and University is a national bank. The defendant, GECU, is a state chartered credit union. The plaintiffs brought this suit, alleging GECU is operating in violation of the law by accepting demand deposits from its members; engaging in branch banking; and committing acts of unfair and illegal competition. The trial court held in favor of the defendant, denying plaintiffs all relief requested.

Plaintiffs bring this appeal on four points of error: (1) the trial court erred in concluding and holding that GECU can engage in business in more than one place without violating the branch banking prohibition of Article XVI, Section 16, of the Texas Constitution; (2) the trial court erred in concluding and holding that GECU is not unlawfully engaged in the business of banking in violation of Texas law; (3) the trial court erred in its construction of the Texas Credit Union Act in concluding that GECU has statutory authority under such Act to engage in the CUIC draft business; and (4) the trial court erred in concluding that GECU is not engaged in unfair competition with appellants by its marketing and advertising of its CUIC draft program.

In 1975, GECU began offering its members[1] the CUIC (credit union instant cash) draft account. The CUIC draft account operates much like a checking account. The CUIC draft account offered by GECU is a system whereby the member deposits funds in an account at GECU, is issued a book of drafts which the member can use to withdraw funds from such account, and can make the draft payable to a third party. The GECU by-laws authorize the credit union to require 60 days' notice before paying out the money on deposit; therefore, the CUIC draft account is not a true demand deposit account. The draft forms look like checks used by commercial banks, except they are made payable through a bank in Dallas. The member must have a share account at GECU before he can open a CUIC draft account. There is no charge to the member for blank draft forms and there is no service charge to the member. Interest of 5.5% is paid on the CUIC draft account. Canceled drafts are not returned to the member, but a carbon copy is made each time a draft is written and the canceled draft is provided to the member upon request and payment of $1.00. It is this program offered by GECU to its members which forms the basis for the plaintiffs' complaint.

### CUIC Draft Accounts

Although appellants and appellee both brief and discuss the branch banking issue first, we will consider and discuss initially the question of whether GECU is unlawfully engaged in the business of banking. In determining this question, we must determine whether GECU is legally authorized by law to offer the CUIC draft account system to its members. A recent opinion by the Attorney General of Texas discussed this matter in some detail and reached the conclusion that state-chartered credit unions may engage in the share draft program. Tex.Att'y Gen.Op. No. H–1084 (1977). This opinion contains a comprehensive and well-reasoned discussion of the question here involved and we are in agreement with the conclusion reached in such opinion.

A share draft has been described as a financing instrument which enables a credit union member to withdraw funds from his

---

1. To become a GECU member, one must belong to the "field of membership" as set forth in the GECU by-laws.

credit union share account without physically going to the credit union. The draft can be used to obtain cash, pay a bill, or make a purchase. A share draft is ordinarily payable through a bank which processes a withdrawal in a manner similar to a check. The National Credit Union Administration has defined "share draft" in its proposed rules governing share draft programs as follows:

"Share draft" means a negotiable or non-negotiable draft or other order which is payable through a bank and is used to withdraw shares from a share draft account.

Throughout the nation credit union share draft programs have been instituted and they have been the subject of some controversy. There are decisions both pro and con in other jurisdictions as to their legality in such states. This is due in part to the fact that the statutes in various states differ. There are a number of attorney general opinions in various states which have reached the conclusion that share draft programs are lawful under the statutes of such states. An interesting opinion is that of the Attorney General of North Carolina in which it is stated that a share draft is not a check because it is not drawn on a bank, and further stated that credit union statutes provide that shares in deposit shall be transferred in such a manner as the board of directors through the by-laws prescribed, with the approval of the Credit Union administration. This is comparable to the Texas Credit Union Code which provides analogous authority and uses the same language with respect to withdrawals and transfer of shares by the adoption of by-laws with the approval of the Commissioner for that purpose.

Appellants argue vigorously that (1) the CUIC draft program issued by GECU is an integral part of the business of banking and where combined with other services offered by GECU constitutes the business of banking; (2) the CUIC draft is not authorized by the Texas Credit Union Act nor is it autho-

rized under recent federal legislation; (3) GECU is engaged in banking. We disagree.

Article 2461–6.02(a) of the Texas Credit Union Act, provides:

Share accounts consist of payments made by members on shares, all of which are common shares of one class, subscribed, paid for, *and transferred in the manner prescribed by the bylaws.* [emphasis added]

Article 2461–11.07(a) of the Texas Credit Union Act provides:

The commissioner, with the approval of the commission, shall promulgate general rules and regulations pursuant to this Act . . . . The rules and regulations shall apply to all credit unions organized under this Act.

Pursuant to statutory authority, the commissioner, with the approval of the Commission, promulgated as a part of the standard by-laws, Section 6.02(3), which provides in pertinent part:

[T]he board of directors shall have the right at any time to prescribe rules regarding remote withdrawal of shares and/or deposits in accordance with regulations promulgated by the Credit Union Commissioner.

While there is no specific regulation in the Credit Union Act authorizing the issuance of share drafts, there is no prohibition against the issuance of share drafts. The credit unions rely on the provisions of the Texas Credit Union Act and the Uniform By-Laws for Credit Unions adopted by the Commission pursuant to statutory authority.

The Credit Union Act, Article 2461–6.03, provides: "Deposit accounts, if any, are operated in accordance with the policies and conditions prescribed by the board of directors." There is no regulation in the Act which restricts deposit accounts. The Depository Institutions Deregulation and Monetary Control Act of 1980, P.L. 96–221 Mar. 31, 1980,[2] provides that credit unions "may

---

2. This Act authorizes many of the services and activities here complained of by appellants, and is a comprehensive revision of rules and regula-

tions affecting banks, savings and loan associations and credit unions. Under it, among other

permit the owners of such share draft accounts to make withdrawals by negotiable or transferable instruments or other orders for the purpose of making transfers to third parties." Appellants advance various arguments in which they urge that this federal Act does not encompass the GECU CUIC draft.

■ We need not consider that question in view of a recent regulation passed by the Texas Credit Union Commission which expressly authorizes such accounts. The Texas Credit Union Commission passed the regulation, effective August 11, 1980. Tex. Credit Union Comm'n, Rule .058.01.06.004, 5 Tex.Reg. 3044 (1980).[3] Such regulation authorizes remote withdrawal deposit accounts (RWD) by credit unions. RWD accounts are "special deposit accounts from which members are authorized to withdraw funds by means of drafts or other procedures authorized by the board of directors. By contract with the member, a credit union may authorize the member to withdraw funds from the RWD account, by drawing drafts on the credit union, payable through a financial institution, subject to such RWD account contract." A rule or order promulgated by an administrative agency acting within its delegated authority should be considered under the same principles as if it were the act of the legislature. *Texas Liquor Control Board v. Attic Club, Inc.*, 457 S.W.2d 41 (Tex.1970); *Trapp v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424 (1946).

■ We have concluded that the trial court properly held that the Credit Union Act authorizes GECU to issue the CUIC drafts program to its members, and that in doing so GECU is not engaged in banking which would make it subject to the control of the Texas Banking Act. Credit unions are not subject to the provisions of the Texas Banking Act.

## Branch Banking

Appellants' basic contention with regard to branch banking is premised on its contention that the CUIC draft issued by appellee is an integral part of banking and when combined with the other services offered by appellee constitutes the business of banking. They further argue or maintain that if CUIC drafts are legal, then appellee is engaged in the banking business and that under the Constitution and laws in this state cannot conduct its banking business at more than one location.

Article XVI, Section 16, of the Texas Constitution provides:

The Legislature shall by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of State supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof.

No such corporate body shall be chartered until all of the authorized capital stock has been subscribed and paid for in full in cash. Such body corporate shall not be authorized to engage in business at more than one place which shall be designated in its charter.

No foreign corporation, other than the national banks of the United States, shall be permitted to exercise banking or discounting privileges in this State.[4]

It is clear that if the above provisions apply to GECU, then GECU is in violation of such provision since it is undisputed that GECU operates more than one facility.

things, banks are now allowed to pay interest on checking accounts.

**3.** In a reply brief, appellant acknowledges that under the Depository Institutions Deregulation and Monetary Control Act of 1980, adopted by Congress on March 21, 1980, federal credit unions and federally insured state chartered credit unions are permitted to offer share drafts through share draft accounts, and that as a federally insured credit union appellee is entitled to offer share draft accounts. Essentially, the thrust of this lawsuit now is that if appellee offers share draft accounts, whether it may do so only at one location.

**4.** Article XVI, Section 16, of the Texas Constitution has been amended since this case was tried. The amendment involves the use of unmanned teller machines, but no contention is made on this appeal that such amendment has any effect on this suit.

This question is also discussed in the Attorney General Opinion No. H–1084, cited above, in which the Attorney General reached the opinion that credit unions were not in violation of the banking prohibition of the constitution and stated:

> The constitutional branching question does not appear to present a "valid" issue. As pointed out above, the legal requirements for the establishment of a credit union differ from that of a bank. The specific requirements contained in Article 16, Section 16, do not fit the basic structure of a credit union.

Appellee and other credit unions are created and authorized to do business under a regulatory section wholly distinct and apart from Article XVI, Section 16, of the constitution, and the legislation effectuating Section 16. The Texas Credit Union Act was created under legislative authority under the provisions of Article XII, Sections 1 and 2, of the Texas Constitution.

▮ We agree with GECU's interpretation of Article XVI, Section 16, that is, that the branch banking restriction applies to those corporate bodies which are created by the first sentence of Article XVI, Section 16. Credit unions were not created by this constitutional provision. Credit unions, which are governed by the Credit Union Act, Article 2461–1.01 et seq., are distinct entities from banks, which are governed by the Banking Code, Article 342–101 et seq. The Banking Code contains a specific branch banking prohibition, Article 342–903. Conversely, the Credit Union Act specifically provides for operation at more than one location in Article 2461–2.08. It is clear that Article XVI, Section 16, was not intended to create or apply to credit unions. Among other things, such constitutional provision requires all authorized capital stock to be subscribed and paid for before it can be chartered. The Credit Union Act does not require all authorized capital stock to be paid in full because this would be impossible. Credit unions do not have a specified amount of capital stock. Appellants do not challenge the constitutionality of the Credit Union Act. The Credit Union Act does not have the capital stock requirements of Article XVI, Section 16, and furthermore, the Credit Union Act expressly provides for operation at more than one location. Article XVI, Section 16, does not apply to credit unions.

We have not found any Texas cases directly in point, but we have found some that are persuasive. This court in *Kaliski v. Gossett*, 109 S.W.2d 340 (Tex.Civ.App.—San Antonio 1937, writ ref'd), rejected a contention that Peoples Industrial Bank, a corporate body created under the Loan and Investment Act was subject to Article XVI, Section 16, because it exercised certain banking and discount privileges. The court held that it was not subject to the regulations of Article XVI, Section 16, because it was not organized under the Banking Act, and stated:

> If it was the intention of the Legislature to authorize the creation of a banking corporation, the act should have provided for their organization under and by virtue of the title relating to banks and banking. The title on private corporations authorizes the creation of corporations with 50 per cent. of the capital stock paid in while the Constitution, section 16, art. 16, requires that banking corporations can only be created when all stock has been paid for in cash.

*Id.* at 344.

The court in *Robertson v. State*, 406 S.W.2d 90 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n. r. e.), said:

> The incorporation of corporate bodies with banking and discounting privileges and the creation of private business corporations encompass law dealing with chartered institutions which are distinctly different. The difference is recognized by the Texas Constitution wherein Art. XVI, § 16, supra, directs the legislature by general laws to authorize incorporation of state banks whereas private or business corporations stem from Art. XII, §§ 1 and 2 of the Texas Constitution. The Texas Legislature recognized this difference when it enacted into law the Texas Business Corporation Act and the

Texas Banking Code, separate set of rules to govern each type of corporation.

*Id.* at 93.

There are other Texas cases which indicate that Article XVI, Section 16, of the Texas Constitution was intended for the creation and regulation of banks only. *See Shaw v. Strong,* 128 Tex. 65, 96 S.W.2d 276 (1936); *Bank of North America v. State Banking Board,* 468 S.W.2d 529 (Tex.Civ. App.—Austin 1971, no writ); *Knollenberg v. Chapman,* 258 S.W. 547 (Tex.Civ.App.— El Paso 1924, writ ref'd).

We have concluded that appellee is not violating Article XVI, Section 16, of the Texas Constitution, or Article 342–903 of the Texas Banking Code. GECU is not engaged in the banking business and is not subject to the terms, rules and regulations of the Banking Code. Appellants' point of error number one is overruled.

*Marketing and Advertising Techniques*

Appellants' last point of error complains that the trial court erred in concluding that GECU is not engaged in unfair competition with appellants by its marketing and advertising of its CUIC draft program. Appellants rely chiefly on the provisions of the Banking Code, Article 342–902, which states that it is unlawful

(1) To conduct a banking or trust business or to hold out to the public that it is conducting a banking or trust business; or

(2) To use in its name, stationery or advertising, the term "bank," "bank and trust," "savings bank," "certificate of deposit," "trust" or any other term or word calculated to deceive the public into the belief that such person, corporation, firm partnership, association, common law trust, or other group of persons is engaged in the banking or trust business.

Provided, however, that this Article shall not apply to (1) national banks; (2) state banks; (3) other corporations heretofore or hereafter organized under the laws of this state or of the United States to the extent that such corporations are authorized under their charter or the laws of this state or of the United States to conduct such business or to use such term; . . . .

We have heretofore held that GECU is not subject to the terms and provisions of the Banking Act and that GECU is authorized to offer its CUIC account and to conduct business in more than one location. Because of such holdings, we find no merit in appellants' last point of error. The trial court made a number of findings of fact pertinent to the question of unfair competition and deceptive advertising including findings that no deceptive advertising had occurred; that the public and consumers had not been damaged by the CUIC draft program; and that appellants have not shown in any way how they have been damaged by such activities. Appellants have no points of error specifically challenging such findings, and we agree with such findings.

All of appellants' points of error have been considered and all are overruled.

The judgment of the trial court is affirmed.